**KURT ORBAN COMPANY, Inc.,
Plaintiff,**

v.

**S/S CLYMENIA, her engines, boilers, tackle, etc., the Broken Hill Proprietary Company, Limited, Union Navale, Defendants.**

**No. 69 Civ. 3381.**

United States District Court.
S. D. New York.
Oct. 20, 1970.

Yorkston W. Grist, New York City, for plaintiff.

Wilson & Walker, New York City, for defendants.

TENNEY, District Judge.

Defendant Union Navale, a French corporate entity (hereinafter referred to as "Union"), the owner of S/S CLYMENIA, moves herein for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure or, in the alternative, to stay further proceedings on the admiralty and maritime claim pending arbitration pursuant to Title 9, U.S.C. § 3. The relevant facts are not in dispute [1] and, briefly stated, are as follows:

In July of 1968, The Broken Hill Proprietary Company Limited, an Australian corporate entity (hereinafter referred to as "Broken Hill"), as time-charterer and carrier, accepted on board S/S CLYMENIA at Newcastle, New South Wales, a shipment of wire coils for carriage to New Orleans, Baltimore and New Haven, and issued therefor its order bills of lading dated July 19, 1968. At that time, the S/S CLYMENIA was operating under a certain time-charter party made between Union and Broken Hill, dated May 4, 1968. The shipment referred to was not one of common carriage but was one of private carriage. It is alleged that the wire coils were

---

1. The only items in defendant's Rule 9G statement under the General Rules of this Court which were disputed by plaintiff are: (1) whether the copy of the charter annexed to the moving papers was an accurate copy, and (2) whether the bills of lading purchased by plaintiff covered the entire cargo. An affidavit by the chartering superintendent of defendant Broken Hill has been submitted which establishes the accuracy of the copy and that a private, rather than common, carriage was involved.

subsequently discharged at New Orleans, New Haven, Bridgeport and Baltimore in a short and damaged condition, final discharge having been completed on August 27, 1968. The complaint herein was filed on August 1, 1969.

Plaintiff Kurt Orban Company, Inc., a New York corporation (hereinafter referred to as "Orban"), having purchased the said bills of lading, has instituted suit herein to recover damages for such shortage and damage in the sum of $25,000. It is Union's contention that Orban, under the terms of the bills of lading which it purchased, agreed to all the terms of the time-charter party between Union and Broken Hill hereinbefore referred to, including the provision of Clause 29 which reads as follows:

> "All disputes from time to time arising out of this Contract shall, unless the Parties agree forthwith on a single Arbitrator, be referred to the final arbitrament of two Arbitrators carrying on business in London who shall be Members of the Baltic and engaged in the Shipping and/or Grain Trades, one to be appointed by each of the parties, with power to such Arbitrators to appoint an Umpire. Any claim must be made in writing and Claimant's Arbitrator appointed within three months of final discharge, and where this provision is not complied with the claim shall be deemed to be waived and absolutely barred. No award shall be questioned or invalidated on the ground that any of the Arbitrators is not qualified as above, unless objection to his acting be taken before the award is made." [2] (Emphasis added.)

The various bills of lading signed by the Master of S/S CLYMENIA and purchased by plaintiff Orban reflect the receipt of the cargo aboard the S/S CLYMENIA at Newcastle "in apparent good order and condition" bound for the particular port involved "as per charter party dated 4th May, 1968" and, further, that "[t]he above-mentioned cargo is to be delivered in the like apparent good order and condition at the aforesaid port * * * unto Order * * * freight for same being payable *as per the aforementioned charter party, all the terms, conditions, clauses and exceptions in which charter party are herewith incorporated.* This Bill of Lading is to have effect subject to the provision of the Rules contained in the Schedule to the Australian Sea-Carriage of Goods Act 1924 as applied by that Act. The Shippers are to be entitled to the benefits of the privileges, rights and immunities conferred upon the Shipper, and the Shipowners are to be entitled to the benefit of the privileges, rights and immunities conferred upon the Carrier, by such Act, and the Schedule thereto, as if the same were herein specifically set out, the unit under Article IV(5) being the ton. General Average (if any) shall be settled according to the York/Antwerp Rules, 1950." [3] (Emphasis added.)

An initial question raised herein by defendant's motions is whether the bills of lading effectively incorporated by reference the provision of the charter party, including the above-quoted arbitration clause. The question must be answered in the affirmative. It would appear that the instant case is essentially indistinguishable from Lowry & Co. v. S. S. Le Moyne D'Iberville, 253 F.Supp. 396 (S.D.N.Y.1966), app. dismissed, 372 F.2d 123 (2d Cir. 1967). See also Son Shipping Co. v. De Fosse & Tanghe, 199 F.2d 687 (2d Cir. 1952). In both *Lowry* and the instant case the arbitration clause was the standard centrocon clause. Indeed, the instant case would appear to be a stronger one for incorporation than *Lowry*, in light of the specific language "herewith incorporated" contained in the bills of lading herein and not present in the Lowry bills. *See Lowry & Co., supra* 253 F.Supp. at 398.

A further question is raised by the language in the bills of lading subjecting them to the provisions of the

2. Def. Exh. A, Annexed to Notice of Motion (dated May 29, 1970).

3. Def. Exh. B, Annexed to Notice of Motion (dated May 29, 1970).

Australian Sea-Carriage of Goods Act. The instant shipment was bound for the United States so that the provisions of the Carriage of Goods by Sea Act (hereinafter referred to as "COGSA"), 46 U.S.C. § 1303(6) would appear applicable; nor am I prepared to interpret the Australian law to oust this Court of jurisdiction. Associated Metals & Minerals Corp. v. The Steamship Mihalis Angelos, 234 F.Supp. 236 (S.D.N.Y. 1964).

■ Plaintiff urges that COGSA precludes both the application of foreign law and the surrender of jurisdiction to a foreign forum. However, the provisions of COGSA, and more particularly § 1303(6) discharging the carrier and ship " * * * from all liability in respect of loss or damage unless suit is brought within one year after delivery of the goods * * * " do not invalidate the three-month limitation period fixed by the charter party clause and adopted by the bills of lading for the arbitration of disputes. *Lowry & Co., supra* 253 F. Supp. at 399.

■ The circumstance that the arbitration is to take place in a foreign country does not affect the right to a stay herein, nor deprive this Court of jurisdiction. Mannesmann Rohrleitungsbau v. S. S. Bernhard Howaldt, 254 F.Supp. 278 (S.D.N.Y.1965); The Quarrington Court, 25 F.Supp. 665 (S.D.N.Y. 1938). The United States Arbitration Act (hereinafter referred to as the "Act"), 9 U.S.C. § 1, was passed "not to oust the jurisdiction of the courts but to provide for maintaining their jurisdiction while at the same time recognizing arbitration agreements as affirmative defenses and providing a forum for their specific enforcement." American Sugar Refining Co. v. The Anaconda, 138 F.2d 765, 766–767 (5th Cir. 1943), aff'd 322 U.S. 42, 64 S.Ct. 863, 88 L.Ed. 1117 (1944).

Having held that there was a valid agreement to arbitrate, there would appear to be little left for the Court presently to concern itself with, since there is no dispute that plaintiff has never invoked the provisions of that agreement, and the dispute between the parties herein clearly falls within its ambit. El Hoss Engineering & Transp. Co. v. American Independent Oil Co., 183 F.Supp. 394 (S.D.N.Y.1960), rev'd on other grounds, 289 F.2d 346 (2d Cir. 1961); see Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959).

■ However, one further matter must be considered in the light of defendant's motion for summary judgment, and that is the effect of the three-month limitation period fixed by the charter party arbitration clause. As already noted, there is no dispute that neither party has ever invoked the arbitration provisions except insofar as defendant has raised them as a defense herein. It is also not disputed that plaintiff instituted the instant suit within the period of limitation provided under COGSA § 1303(6), and, although the Court has not been furnished with statutory authority, presumably within the like period fixed by the Australian Sea-Carriage of Goods Act. It can be argued with some merit that the incorporation of the provisions of the Australian Act in the bill of lading along with the arbitration provisions of the charter party creates an inconsistency or ambiguity such as was postulated by the incorporation of the COGSA limitation period in the bills in *Lowry*. But, if this be the case, the interpretation of the conflicting or ambiguous provisions is for the arbitrators, not for the Court. *Lowry, supra;* In re Tsakalotos Navigation Corp., 259 F.Supp. 210, 212–213 (S.D. N.Y.1966) and cases cited. This is not to say that, absent any ambiguity as to the applicable limitation provision, summary judgment might not be proper. Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise, 239 F.2d 689, 694 (4th Cir. 1956); Government of Indonesia v. The General San Martin, 114 F.Supp. 289 (S.D.N.Y.1953).

However, the issue of laches or the effect of whatever limitation period is

found to be applicable would appear to be for the arbitrators and not the Court, particularly where no claim is made by defendant that it has been prejudiced in its ability to present proof by the delay. Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568, 571–572 (2d Cir. 1968).

Accordingly, defendant's motion for summary judgment is denied and its motion to stay the present action pending arbitration is granted. Submit order in conformity herewith on notice and fixing the time within which the provisions for the appointment of the arbitrators shall be complied with.