The **MIDLAND TAR DISTILLERS,
INC.**, Plaintiff,

v.

**M/T LOTOS**, her engines, boilers, etc.,

v.

**skibs A/S storli et al.**, Defendants.

No. 70 Civ. 3831.

United States District Court,
S. D. New York.

Sept. 5, 1973.

Brigham, Englar, Jones & Houston,
New York City, for plaintiff.

Haight, Gardener, Poor & Havens,
New York City, for defendants.

CANNELLA, District Judge.

Defendants Skibs A/S Storli; Skibs
A/S Oljetransport & Stener S.; and
Muller Rederi A/S, corporations organ-

ized under the laws of the Kingdom of Norway (hereinafter referred to as "Shipowners"), the owners of M/T "LOTOS", move to stay further proceedings on this admiralty and maritime claim pending arbitration, pursuant to 9 U.S.C. § 3. The motion is granted.

The relevant facts are not in dispute and, briefly stated, are as follows: On September 2, 1970, the date on which this action was commenced, the M/T "LOTOS", an oil tank motor vessel, was owned by the defendant shipowners. Prior to that date the M/T "LOTOS" was chartered to The Midland Tar Distillers Limited (hereinafter referred to as Midland Limited), a corporation organized under the laws of the United Kingdom of Great Britain, under a charter party, dated Bergen, Norway, July 20, 1965, between A/S Rederiet Odfjell, Minde per Bergen, as manager and agent for the Shipowners and Midland Limited, as charterer. This charter party, presently before the court, contains an arbitration clause governing all disputes arising thereunder.

18. Any dispute arising in any way whatsoever out of this Charter-Party shall be settled in London, Owners and Charters each appointing an Arbitrator-Merchant or Broker—and the two thus chosen, if they cannot agree, shall nominate a third Arbitrator-Merchant or Broker—whose decision shall be final. Should one of the parties neglect or refuse to appoint an Arbitrator within twenty-one days after receipt of request from the other party, the single Arbitrator appointed shall have the right to decide alone, and his decision shall be binding on both parties. For the purposes of enforcing awards this agreement shall be made a Rule of Court.

On July 29, 1970, Midland Limited shipped a bulk cargo of Cresylic Acid on board the "LOTOS" to Midland Storage, Inc. (a new Jersey Corporation), as consignee, under a bill of lading, dated in Cadishead, England. The "LOTOS" arrived at Port Elizabeth, New Jersey on August 15, 1970 and there made delivery of its cargo to the plaintiff, Midland Tar Distillers, Inc. (a New Jersey corporation), which had, prior to that date, become the owner for value and holder of the bill of lading, dated July 29th.[1] This July 29th bill of lading, the subject of the instant motion, states in pertinent part:

SHIPPED ON BOARD in apparent good order and condition (unless otherwise stated) the above goods or packages said to contain the goods specified (weight, measurement, quality, contents value unknown) for conveyance as described herein and which, subject to all the terms, liberties and conditions of CHARTER PARTY DATE are to be carried to and discharged at the port of discharge above named, or as near thereto as the ship may safely get, always afloat, and there deliver unto *The Midland Tar Distillers Inc., 534 South Front Street, Elizabeth, New Jersey, U.S.A.* or his assigns.

Plaintiff commenced this action alleging that the defendants' improper loading, stowage, handling, and discharge of the cargo and the exposure of the cargo to salt water and other foreign substances, caused the Cresylic Acid to arrive with substantial product losses and in a severely contaminated condition. Defendant now moves for a stay of this litigation pending arbitration of the controversy.

The primary question raised by the motion is whether the provisions of the instant bill of lading effectively incorporate by reference the charter party of July 20, 1965, including the arbitration clause thereof (set out above) and thereby embody the complete contract of carriage governing this transaction. This question must be answered in the affirmative.

It is well settled that arbitration is a creature of contract and that one cannot be compelled to arbitrate un-

---

1. Complaint ¶ 7 at 3.

less he has agreed to do so. Such an agreement need not be embodied in any single writing or document, but rather, as the Court of Appeals for this circuit has made clear, a charter party and a bill of lading may be read together to form the complete contract of carriage between the parties. Son Shipping Co. v. DeFosse & Tanghe, 199 F.2d 687, 688 (2 Cir.1952).

> Where the terms of the charter party are, as here, expressly incorporated into the bills of lading they are a part of the contract of carriage and are binding upon those making claim for damages for the breach of that contract just as they would be if the dispute were between the charterer and the shipowner.

Numerous later cases, both in this district and elsewhere, have adhered to this approach. *See,* Lowry & Co. v. S.S. LeMoyne D'Iberville, 253 F.Supp. 396 (S.D.N.Y.1966), appeal dismissed, 372 F.2d 123 (2 Cir. 1967); Kurt Orban Company v. S/S Clymenia, 318 F.Supp. 1387 (S.D.N.Y.1970); Michael v. S/S Thanasis, 311 F.Supp. 170 (N.D.Cal. 1970); Mitsubishi Shoji Kaisha Ltd. v. MS Galini, 323 F.Supp. 79 (S.D.Texas 1971). *See also,* W. Poor, Poor on Charter Parties and Ocean Bills of Lading § 26 (5th ed. 1968).

 The court must construe the terms of the charter party and the bill of lading, as well as both of them together, in accordance with the principles ordinarily applied to the construction of commercial contracts. Lowry & Co. v. S.S. LeMoyne D'Iberville, 253 F.Supp. 396, 398–399 (S.D.N.Y.1966). The bill of lading will be found to incorporate an arbitration clause contained in the charter party and will be made subject to it when the bill clearly refers to the charter party and the holder of the bill has either actual or constructive notice of the incorporation. Son Shipping, *supra,* 199 F.2d at 688; Lowry & Co. v. S.S. Nadir, 223 F.Supp. 871 (S.D.N.Y.1963); Michael v. S.S. Thanasis, *supra,* 311 F. Supp. at 173; C.f., Import Export Steel

Corp. v. Mississippi Valley Barge Line Co., 351 F.2d 503, 505–506 (2 Cir. 1965). The bill in the instant case makes clear reference to the charter by employing the words "subject to all the terms, liberties and conditions of the CHARTER PARTY" and it names the plaintiff, both in the "incorporation clause" and elsewhere, thereby affording it sufficient notice of the terms incorporated.

Plaintiff opposes the application of these principles of incorporation by reference to the present dispute and relies on Production Steel Company of Illinois v. S.S. Francois L.D., 294 F.Supp. 200 (S.D.N.Y.1968) in support of its position. In *Production Steel,* Judge Mansfield refused a stay pending arbitration, based on a finding that the arbitration clause of the charter had not been incorporated by the bill of lading, and therefore, was not binding on the parties then before the court. The court premises this result on the detailed provisions of the bill, which it found to fully and exclusively embody the obligations of the parties, thus operating to prevent incorporation of the charter party terms. 294 F.Supp. at 201. The instant bill of lading, unlike that before the court in *Production Steel,* is completely devoid of any detail, and it cannot support an argument against the court's application of the doctrine of incorporation by reference. (Indeed, this lack of detail manifests to the court the intent of the parties that incorporation occur.)

The plaintiff next contends that even if the bill of lading effectively incorporates the terms and conditions of the charter party, the arbitration clause is not thereby incorporated; the clause being limited by its terms to disputes between the owners and charterer and not available in disputes to which plaintiff is a party. The clause provides that *"any dispute arising in any way whatsoever out of this Charter-Party shall be settled in London, Owners and Charterers each appointing an Arbitrator"* (emphasis added). Judge Weinfeld has well stated the criteria applicable in de-

termining whether or not such a provision may be enforced against the original parties only or against subsequent parties as well. Lowry & Co. v. S.S. LeMoyne D'Iberville, 253 F.Supp. 396, 398 (S.D.N.Y.1966), appeal dismissed, 372 F. 2d 123 (2 Cir. 1967).

It is true that a charter party provision for arbitration of disputes which is restricted to the immediate parties or limited to disputes "between the * * * Owners and the Charterers," as was the case of Import Export Steel Corp. v. Mississippi Valley Barge Line Co. . . . does not bind any but the named persons. On the other hand, an agreement to arbitrate all "disputes * * * arising out of this charter" binds not only the original parties, but also all those who subsequently consent to be bound by its terms.[2]

■ The court finds the clause presently before it to be ambiguous on its face and therefore, to be not clearly within the categories enunciated by Judge Weinfeld. Two very different meanings can be drawn from the words used. The provision can be read as encompassing all disputes between any of the parties to the charter or the bill of lading. Alternatively, the clause may be construed as limited to only disputes between the owners and charterer since they alone appear to have the power to select arbitrators (other than the impartial).

The plaintiff argues for the latter construction and, again, relies on *Production Steel, supra,* 294 F.Supp. 200, in support of its position. In that case the arbitration clause was, by its terms, expressly and unequivocally limited to the parties to the charter party and to the arbitration of disputes between the owners and charterers and did not encompass disputes with third parties. 294 F.Supp. at 201. The court finds plaintiff's reliance on *Production Steel* misplaced. The arbitration clause presently before the court contains no such clear and unequivocal limitation, nor, as will be demonstrated may such construction be reasonably inferred.[3]

■ The court is obligated to construe the ambiguities of the instant clause in accordance with the rules generally applied to commercial contracts, in order to glean the intent of the parties from the words they used and the actions they performed in their conduct of the transaction. The arbitration provision, by its terms, plainly manifests the intent of the parties to the charter party to arbitrate all disputes arising thereunder. This intent to arbitrate all

2. This approach has been employed elsewhere. Son Shipping Co. v. DeFosse & Tanghe, 199 F.2d 687, 688 (2 Cir. 1952) ; Kurt Orban Company v. S/S Clymenia, 318 F.Supp. 1387, 1389 (S.D.N.Y.1970) ; Import Export Steel Corp. v. Mississippi Valley Barge Line Co., 351 F.2d 503, 505–506 (2 Cir. 1965).

3. The court is not unmindful of the English case of "The Elizabeth H." 1 Lloyd's List L.R. 172 (Admiralty Div.1962), wherein the court had before it an arbitration provision phrased almost identically to the instant clause. The court there refused to stay the action pending arbitration finding that the provision for the owners and charterers to select the arbitrators made the applicability of the clause to third persons unclear, thereby rendering it unenforceable against them. Id. at 178. The case considered at length the *Son Shipping* case, *supra*, and recites that the clause before the court in *Son Shipping* was phrased similarly to the one presently before the court, as well as, to that before the English court. Id. at 175–178. The English court found that the Court of Appeals did not pass upon the scope of such clause, and therefore, it was free to refuse the stay requested of it. Id. at 178. The English judge goes so far as to suggest that had the Court of Appeals considered the clause in full it would have denied the requested stay. Id. at 177–178. With this the court cannot agree. There is no indication of such result in *Son Shipping* or in any later American case. The relatively unfavorable attitude toward arbitration embraced by the English courts, unlike the approach taken by the courts of this country, better explains the result in "The Elizabeth H." than does any reliance on American precedent by the English court. Kulukundis Shipping Co. v. Amtorg Trading Corp., 126 F.2d 978 (2 Cir. 1942) ; Lowry & Co. v. S.S. Nadir, 223 F.Supp. 871, 874 (S.D.N.Y.1963).

disputes was carried forward into the bill of lading by the parties thereto by means of the unrestricted incorporation provision contained in the bill. The parties' use of the words "all the terms, liberties and conditions" allows the court no inference of any contrary intent. The plaintiff became obligated to arbitrate any dispute involving this shipment at the moment it became holder of the bill; plaintiff then having sufficient notice of the incorporated terms.[4]

 The incorporation of the arbitration clause by the bill of lading, and thereby, by the plaintiff's contract of carriage, expands the scope of that clause to embrace persons other than the two parties extant at the time of its drafting. The court finds implicit in this expanded usage, a concomitant expansion in the provision for the selection of arbitrators. The arbitration provision, viewed in light of the totality of the present circumstances, especially the intended incorporation of it as a term of the bill, should be read so as to afford each party to an arbitrable controversy the right to select an arbitrator. The intent of the parties to arbitrate all controversies could not otherwise be effectuated without creating hardship and working an injustice.[5]

The Court must next address itself to plaintiff's argument that the court cannot stay the present action in favor of an arbitration that is to take place in London, England. The argument is without merit. It is well settled that provision for arbitration to take place in a foreign country does not affect the power of this court to stay the action pursuant to 9 U.S.C. § 3. Kurt Orban Company v. S/S Clymenia, 318 F.Supp. 1387, 1390 (S.D.N.Y.1970); Mannesmann Rohrleitungsbau v. S.S.

Bernard Howaldt, 254 F.Supp. 278 (S. D.N.Y.1965); The Quarrington Court, 25 F.Supp. 665 (S.D.N.Y.1938).[6] The contract of the parties requires that the instant dispute be submitted to arbitration and the court concludes that this action should be stayed pending the outcome of that proceeding.

Defendants' motion to stay the instant action pending arbitration, pursuant to 9 U.S.C. § 3, is granted. Submit order on notice in conformity herewith.

---

4. Son Shipping, *supra*, 199 F.2d at 688; Import Export Steel Corp. v. Mississippi Valley Barge Line Co., *supra*, 351 F.2d at 506; Lowry & Co. v. SS LeMoyne D'Iberville, *supra*, 253 F.Supp. at 398–399.

5. The court, while sitting in admiralty, is not deprived of its character as an equity court and, therefore, it may apply equitable prin-

ciples to insure that justice is done between the parties. 1 Benedict on Admiralty § 71 (6th ed., Knauth, 1940); Robinson on Admiralty § 22 (1939).

6. *See also,* 4 Benedict on Admiralty § 611 (6th ed., Knauth, 1940); Robinson on Admiralty § 26 (1939).