**COMPANIA ESPANOLA DE PETRO-LEOS, S.A., Plaintiff,**

v.

**NEREUS SHIPPING, S.A.,**
**Defendant.**

**No. 74 Civ. 5102.**

United States District Court,
S. D. New York.

Dec. 18, 1974.

Poles, Tublin, Patestides & Stratakis, New York City, for plaintiff.

Burke & Parsons, New York City, for defendant.

## MEMORANDUM

STEWART, District Judge.

Plaintiff Compania Espanola de Petroleos, S. A. ("Cepsa") brings this action for declaratory and injunctive relief against defendant Nereus Shipping, S. A. ("Nereus"). Plaintiff seeks an order from this court that it is not legally obligated to proceed to arbitration as demanded by defendant in a dispute arising out of a contract of affreightment ("contract") between the defendant and charterer Hidrocarburos Y Derivados, C. A. ("Hideca").

Under the contract, Hideca agreed to ship 600,000 tons of crude oil and/or dirty petroleum products, 10 percent more or less at defendant's option, for a three-year period commencing December 24, 1971. While no dispute arose during the first two years of the contract, defendant alleges that Hideca defaulted in its performance of the contract during the third year. That dispute is the subject of separate arbitration proceedings by Hideca against defendant Nereus; there is apparently no contention that these arbitration proceedings were improperly brought and, in any event, they are not presently before us.

What is before us is the issue of whether plaintiff Cepsa is obligated to arbitrate disputes arising from a Letter of Guaranty—Addendum 2 to the contract—signed by plaintiff Cepsa as a guarantor of Hideca. Under the guaranty, Cepsa agreed that "should Hideca default in payment or performance of its obligations under the Charter Party [contract of affreightment], we will perform the balance of the contract and assume the rights and obligations of Hideca on the same terms and conditions as contained in the Charter Party."

The addendum continues:

Provided, however, that Compania Espanola de Petroleos, S. A. shall not be responsible for any payments or damages as a result of HIDECA's default, prior to receiving written notice from the Owner [Nereus] advising us that HIDECA is in default, and calling upon us to assume performance of the Charter Party.

Believing that Hideca had defaulted in its performance of the contract of affreightment, Nereus notified Cepsa on July 24, 1974 that Hideca was in default and called upon Cepsa to perform the remainder of Hideca's obligations under the contract. There then followed an exchange of communications between plaintiff and defendant during which time Nereus contended that Cepsa was not fulfilling its obligations under the guaranty, and Cepsa countered that Nereus had improperly invoked the guaranty since Hideca was not actually in default.

Following this exchange, defendant Nereus served plaintiff with a demand

for arbitration on September 3, 1974, on the theory that Cepsa had agreed to be bound by the arbitration clause in the contract when it signed the letter of guaranty. The arbitration clause provides in relevant part that "any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York. . . . " It further provides that:

> If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person, with precisely the same force and effect as if said second arbitrator has been appointed by the other party.

After Nereus named an initial arbitrator and Cepsa failed to name its own arbitrator, Nereus named a second arbitrator pursuant to the above clause. Those two arbitrators then appointed a third arbitrator in accordance with the arbitration clause of the contract.

The arbitration proceedings were scheduled to begin November 21, 1974. On that date, plaintiff Cepsa filed this action and successfully sought a temporary restraining order from this court enjoining the commencement of the scheduled arbitration proceedings.

Plaintiff now seeks an injunction to enjoin the defendant and the arbitrators from commencing the arbitration proceedings. Plaintiff also seeks a declaratory judgment that it is not subject to the arbitration clause in the contract between Nereus and Hideca; that, alternatively, such arbitration may proceed only after a finding that Hideca has actually defaulted in its contractual obligations with Nereus; and that the arbitration panel was improperly constituted, since there was allegedly no arbitrable dispute between Cepsa and Nereus at the time the arbitrators were appointed.

For the reasons stated below, we deny plaintiff's request for declaratory and injunctive relief.

I. Incorporation of the Letter of Guaranty.

■ Plaintiff argues that its signing of the Letter of Guaranty did not obligate it to enter into arbitration with Nereus. It contends that while it agreed to perform the balance of the contract of affreightment under certain conditions, arbitration is not "performance," and hence it is not bound to arbitrate. We find it unnecessary to construe the meaning of the word "performance" in the contract, since by the addendum Cepsa agreed not only to perform the balance of the contract, but to "assume the rights and obligations of HIDECA on the same terms and conditions as contained in the Charter Party [contract of affreightment]." This language is clear and unequivocal, and, we believe, compels a finding that the Letter of Guaranty does incorporate the contract's arbitration clause. We do not believe that the proviso in the Letter of Guaranty requiring Nereus to notify Cepsa of any default by Hideca causes us to modify this finding. That proviso obligated Nereus to advise Cepsa of Hideca's default, and to call upon Cepsa to "assume performance of the Charter Party." Even though this language does not reiterate that Cepsa was to assume the rights and obligations of HIDECA following alleged nonperformance, we do not believe such language was necessary.

■ Cases cited by plaintiffs that suggest the Letter of Guaranty does not incorporate the arbitration clause are distinguishable. In Production Steel Company of Illinois v. SS François L. D., 294 F.Supp. 200 (S.D.N.Y.1968), the court held that a holder of a bill of lading made subject to all the terms and conditions of the Charter Party was not

bound by the arbitration clause of the Charter Party. In that case, unlike the instant case, the arbitration clause was expressly and unequivocally applicable to disputes between "the owners and the charterers." In the instant case, the arbitration clause is more general, and calls for arbitration of "any and all disputes of whatsoever nature arising out of this Charter. . . ." While the arbitration clause here does call for the appointment of arbitrators by "the owner" and "the charterer," we do not believe that language evinces a definite intent to preclude application of the arbitration clause to Cepsa as a guarantor of Hideca's obligations in the contract.

In Midland Tar Distillers, Inc. v. M/T LOTOS, 362 F.Supp. 1311 (S.D.N.Y. 1973) the court distinguished *Production Steel*, on the ground that in the latter case the bill of lading which purported to incorporate the Charter Party was detailed and exclusively embodied the obligations of the parties, thus operating to prevent incorporation of the arbitration clause of the Charter Party. In *Midland Tar*, however, the bill of lading provisions were devoid of detail, and the court found that the bill of lading there effectively incorporated an arbitration clause contained in the Charter Party. That case is similar to the instant case, where the letter of guaranty is in general terms. The *Midland Tar* court further distinguished *Production Steel* on the ground that the arbitration clause in the latter case was restricted to the original parties, whereas the arbitration clause before it was not so clearly and unequivocally limited. As we indicated above, the arbitration clause before us is not as specific as that in *Production Steel.*

Judge Weinfeld has stated the criteria which should be used in determining whether or not an arbitration provision similar to the one in the instant case may be enforced against the original parties only or against subsequent parties as well.

It is true that a charter party provision for arbitration of disputes which is restricted to the immediate parties or limited to disputes "between the * * * Owners and the Charterers" . . . does not bind any but the named persons. On the other hand, an agreement to arbitrate all "disputes * * * arising out of this charter" binds not only the original parties, but also all those who subsequently consent to be bound by its terms. (footnotes omitted)

Lowry & Co. v. S. S. LeMoyne D'Iberville, 253 F.Supp. 396, 398 (S.D.N.Y. 1966), appeal dismissed, 372 F.2d 123 (2d Cir. 1967). *See also* Son Shipping Co. v. DeFosse & Tanghe, 199 F.2d 687, 688 (2d Cir. 1952). We believe that Judge Weinfeld's language is directly applicable to the instant case and that "[i]t is not necessary, in order to incorporate by reference the terms of another document, that such purpose be stated *in haec verba* or that any particular language be used." 253 F.Supp. at 398.

Thus we conclude that the Letter of Guaranty does incorporate the arbitration clause in the contract of affreightment. It thus follows that Cepsa has consented to arbitrate disputes once it has been notified by Nereus of any default by Hideca.

## II. Prematurity of Arbitration

Cepsa argues that even if it is bound to arbitrate with Nereus, it cannot do so until it has been conclusively determined that Hideca has defaulted. It maintains that this conclusion follows from the proviso in the Letter of Guaranty that it shall only be liable for payments or damages as a result of Hideca's default after receiving written notice that Hideca is in default. We disagree. We are in accord with the judge in *Midland Tar* that any ambiguities in the letter of guaranty must be construed "in

accordance with the rules generally applied to commercial contracts, in order to glean the intent of the parties from the words they used and the actions they performed in their conduct of the transaction." Midland Tar Distillers, Inc. v. M/T LOTOS, 362 F.Supp. 1311, 1314 (S.D.N.Y.1973). In so holding, we do not find Cepsa's interpretation commercially reasonable. If plaintiff's interpretation were correct, Cepsa would never be bound to perform any of the obligations of Hideca until it were first conclusively determined, presumably by arbitration, that Hideca was in default, and until judicial appeals were exhausted. If this procedure were followed, plaintiff's guaranty would be limited effectively to paying damages at some point in the future to the defendant, unless Cepsa were willing to concede that Hideca was in fact in default. We thus conclude that Cepsa's obligations under the Letter of Guaranty came into play as soon as it received the notification from Nereus that Hideca was in default. If it is determined in the arbitration proceedings between plaintiff and defendant that Hideca was not in default, plaintiff will not be required to pay any damages. And if the arbitrators conclude that Hideca was in default, plaintiff is free to attack that finding in a later action by defendant to confirm the arbitration award. *See* Kentucky River Mills v. Jackson, 206 F.2d 111 (6th Cir. 1953), cert. denied, 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 392.

III. Injunctive Relief.

Since we find on the merits for the defendant, we need not consider whether injunctive relief is warranted in the instant case.

For the reasons indicated, plaintiff's motions for declaratory and injunctive relief are denied. This opinion shall be considered as findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

So ordered.