**LDS, INC., Plaintiff,**

v.

**METRO CANADA LOGISTICS, INC., Defendant.**

**No. CIV. A. 98–2046–EEO.**

United States District Court, D. Kansas.

Nov. 23, 1998.

Mark E. Brown, Marcia J Rodgers, Litman, McMahon & Brown, Kansas City, MO, for LDS, Inc.

William Bruce Day, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, for Metro Canada Logistics, Inc.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of defendant Metro Canada Logistics, Inc. ("Metro") to dismiss or stay this proceeding and enforce the arbitration agreement entered into between the parties (Doc. # 17). Plaintiff LDS, Inc. ("LDS") has responded, and opposes the motion. Defendant has filed a reply. The court granted plaintiff leave to file a surreply, and the surreply has now been filed. The court has carefully considered the parties' arguments and the applicable law, and is ready to rule. For the reasons set forth below, defendant's motion will be granted.

### I. *Factual Background.*

The following facts are gleaned from the pleadings and the parties' briefs: Plaintiff LDS is a Lenexa, Kansas, computer software company, engaged in the business of creating and marketing specialty software. LDS developed a software for tracking warehouse inventory and transfer of goods. Defendant Metro is a Canadian corporation. In 1996, Metro entered into a contract with another Canadian company, Effem Foods, to operate its warehouse. Metro Canada and Effem Foods sought to use the LDS software to operate the warehouse.

In January of 1996, Metro and LDS entered into a Software License Agreement ("License Agreement") and a software maintenance agreement ("the Code Maintenance Agreement"). The License Agreement granted Metro the right to use LDS' software in accordance with the terms of the agreement. The License Agreement also contained an arbitration clause, which provided:

> Except for the right of either party to apply to a court of competent jurisdiction for an interim or interlocutory injunction or other provision remedy to preserve the status quo or prevent irreparable harm pending selection of an arbitrator, any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration in the United States in accordance with the rules of the American Arbitration Association by a single arbitrator appointed by the American Arbitration Association. The arbitrator shall have a background in the computer software technology and licensing and such other education and training to pass on the particular matter to be decided on. The written decision and reasons of the arbitrator shall be communicated to the parties not later that [sic] thirty (30) days after the close of argument in the arbitration.

The License Agreement was executed by Thomas C. Long, president of LDS, and Lawrence B. Wiesman, vice president, corporate development, of Metro. The agreement was drafted by LDS.

In January of 1998, LDS filed suit against Metro, alleging unauthorized use by Metro of the LDS software. In the complaint, LDS asserts claims for copyright infringement and breach of contract. Subsequently, Metro

filed the instant motion seeking a dismissal or stay of the federal court proceedings and enforcement of the arbitration provision.

## II. *Standards for Arbitration.*

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1–16, "evinces a strong federal policy in favor of arbitration." *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995) (citing *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987)), *cert. denied,* —— U.S. ——, 119 S.Ct. 65, 142 L.Ed.2d 51 (1998). The purpose of the FAA "was to reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 24, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). "If a contract contains an arbitration clause, a presumption of arbitrability arises." *ARW,* 45 F.3d at 1462 (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). This presumption may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* All doubts should be resolved in favor of coverage. *Id.* As the Supreme Court stated in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983):

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*See also Esposito v. Hyer, Bikson & Hinsen, Inc.,* 709 F.Supp. 1020, 1022 (D.Kan.1988) (quoting *Moses H. Cone,* and noting that the Supreme Court has given its "stamp of approval" to the principle that arbitration pro-

visions are to be construed broadly to effectuate the strong federal policy evidenced by the Federal Arbitration Act). Courts are to "rigorously" enforce agreements to arbitrate. *ARW* 45 F.3d at 1462 (citing *McMahon,* 482 U.S. at 226, 107 S.Ct. 2332).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Thus, section 3 of the FAA requires a district court to stay judicial proceedings where a written agreement provides for the arbitration of the dispute. Section 4 provides that a party aggrieved by another party's refusal to abide by an arbitration provision may petition a district court for an order compelling arbitration; if the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," it must issue the requested order.

"The policy basis of [the FAA] is particularly strong in the context of international transactions." *Coors Brewing Co. v. Molson Breweries,* 51 F.3d 1511, 1514 (10th Cir.1995) (citing *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S.,* 9 F.3d 1060, 1063 (2d Cir.1993)).

We are mindful that "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 649, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).[1]

---

1. We note that both parties have interspersed their briefing of the arbitration issue with arguments pertaining to the merits (*i.e.,* whether Metro did in fact infringe LDS' copyright). Such argument is not relevant to the inquiry before us, and thus will not be addressed in this memorandum and order.

III. *Discussion.*

Metro contends that plaintiff's claims must be arbitrated because "[t]he facts underlying LDS' copyright infringement and breach of contract claims are closely ·intertwined, and the claims arise under or relate to the Software License Agreement executed in January, 1996." Metro's Brief at 5. Metro points to the plain language of the arbitration clause, which specifically provides, "any controversy or claim arising out of or relating to this Agreement shall be settled by arbitration."

In opposing the motion, LDS submits the following arguments: (1) the copyright infringement claim is not subject to arbitration because it is "non-arbitrable subject matter;" (2) the arbitration provision contained within the License Agreement is unenforceable because LDS terminated the License Agreement; (3) the terms of the arbitration provision do not cover copyright infringement; and (4) LDS' damages arising from breach of the Code Maintenance Agreement should not be subject to arbitration, because that agreement does not contain an arbitration provision. The court will address each of these contentions in turn.

LDS contends that an arbitrator is without jurisdiction to resolve copyright infringement disputes, because "jurisdiction of copyright infringement claims belongs to the Court under 28 U.S.C. § 1338." LDS' Response Brief at 6. Although the Supreme Court has not directly addressed the issue of enforceability of arbitration agreements in the context of copyright infringement claims, in a series of four cases, the Supreme Court has upheld the enforceability of arbitration agreements under the FAA in connection with various other statutory claims. *See Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (claim under Age Discrimination in Employment Act); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (claims arising under the Securities Act of 1933); *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (claim under § 10(b) of the Securities Exchange Act of 1934 and claim under civil provisions of Racketeer Influenced and Corrupt Organizations Act); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (claim brought under the Sherman Antitrust Act).

In each of these cases, the Supreme Court determined that the FAA was enacted to reverse the longstanding judicial hostility toward arbitration agreements and to place such agreements on the same footing with other contracts. These cases also recognized that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647 (citing *Mitsubishi,* 473 U.S. at 628, 105 S.Ct. 3346). Absent a well-founded claim that an arbitration agreement resulted from the sort of fraud or excessive economic power that "would provide grounds 'for the revocation of any contract,'" *Mitsubishi,* 473 U.S. at 627, 105 S.Ct. 3346, the FAA "provides no basis for disfavoring agreements to arbitrate statutory claims by skewing the otherwise hospitable inquiry into arbitrability." *Id.* Consequently, the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded on statutory rights." *McMahon,* 482 U.S. at 226, 107 S.Ct. 2332.

 While the Supreme Court has made it clear that predispute arbitration agreements relating to statutory claims are generally enforceable, the court acknowledged that some claims may not be appropriate for arbitration where Congress itself intended to preclude a waiver of judicial remedies for the statutory rights at issue. *Id.* The burden to demonstrate such a contrary congressional intent rests with the party opposing arbitration. *Id.* 482 U.S. at 227, 107 S.Ct. 2332. The party contending that an agreement to arbitrate a statutory claim is not enforceable has the burden of showing that "Congress intended in a separate statute to preclude a waiver of judicial remedies." *Rodriguez,* 490 U.S. at 483, 109 S.Ct. 1917. To establish that Congress intended to preclude a waiver of a judicial forum for statutory claims, such in-

tent must be manifested in the text of a particular statute, in its legislative history, or by an inherent conflict between arbitration and the underlying purposes of the applicable statute. *McMahon,* 482 U.S. at 227, 107 S.Ct. 2332. Throughout such an inquiry, the Supreme Court has cautioned that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer,* 500 U.S. at 26, 111 S.Ct. 1647 (quoting *Moses H. Cone,* 460 U.S. at 24, 103 S.Ct. 927).

■ Here, plaintiff has not even attempted to meet its burden of showing that Congress intended in a separate statute to preclude a waiver of a judicial forum for copyright infringement claims. We are aware of nothing in the text of the Copyright Act evincing a Congressional intent to preclude arbitration, nor are we aware of any legislative history indicating Congress' intent to prohibit arbitration of copyright infringement claims.

Further, we are mindful of the Supreme Court's directive in *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), wherein the court stated that the presumption of arbitrability

> is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder ...." In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf, supra,* 363 U.S. at 584–585, 80 S.Ct. at 1353–54.

*Id.* 475 U.S. at 650, 106 S.Ct. 1415. We find the language in the License Agreement mandating arbitration of "any controversy or claim arising out of or relating to this Agreement" to be quite broad, and we note the absence of any express provision excluding copyright infringement disputes from arbitration. Indeed, LDS concedes that "the License Agreement is silent as to any procedures regarding any copyright infringement claims between the parties." LDS' Response Brief at 7. Consequently, we must look for "forceful evidence" of a purpose to exclude copyright infringement claims from arbitration. *Id.* No such evidence is before the court.

In deciding whether the statutory claim of copyright infringement is arbitrable, we find the Tenth Circuit's analysis in *Coors Brewing Company v. Molson Breweries,* 51 F.3d 1511 (10th Cir.1995) analyzing the arbitrability of antitrust claims helpful to our determination. There, Coors entered into a licensing agreement with Molson, a Canadian corporation also in the beer industry. *Id.* 51 F.3d at 1512. Coors and Molson agreed that Molson would brew and distribute Coors products in Canada. *Id.* Under the terms of the agreement, Coors gave Molson access to Coors trademarks, brewing processes, and marketing information. *Id.* 51 F.3d at 1513. Molson agreed to use its best efforts to distribute Coors products in Canada and to keep marketing and product information confidential. *Id.* The agreement also contained an arbitration clause: "Any dispute arising in connection with the implementation, interpretation or enforcement of this Agreement, except as provided in 4.02, shall be finally settled under the Rules of the American Arbitration Association...." *Id.*

When Molson subsequently entered into a partnership with Miller Brewing Company, a Coors competitor, Coors sued Molson and Miller alleging antitrust violations of the Clayton and Sherman Acts. Coors also filed a notice of arbitration with Molson, alleging that Molson breached its contract with Coors. Molson brought a motion to stay the antitrust proceedings pending resolution of the contract arbitration. The district court denied the motion. Molson appealed, arguing that Coors had dressed up its contract claims in antitrust clothes to avoid its own agreement to arbitrate.

Coors argued that the arbitration clause in the license agreement is narrow, and does not include antitrust disputes. In rejecting this contention, the Tenth Circuit reasoned:

Coors does not cite any authority holding that the arbitration clause at issue is a narrow arbitration clause or that this antitrust dispute does not arise from the "implementation, interpretation, and enforcement" of the agreement; it merely asserts that the instant clause is a narrow one. In addition, Coors does not make an interpretive argument or suggest any intuitive reason why the Coors–Molson arbitration clause does not cover antitrust disputes. Without a persuasive argument explaining why the parties meant this apparently broad language to exclude antitrust disputes, the comprehensive nature of the terms "implementation" and "enforcement" in the arbitration clause, the agreement to arbitrate all matters involving the "interpretation" of the agreement, and the public policy in favor of arbitration compel us to read the arbitration clause to include antitrust disputes.

*Id.* 51 F.3d at 1515. Consequently, the court concluded that the language "any dispute arising in connection with the implementation, interpretation or enforcement" in the Coors–Molson arbitration clause covered antitrust disputes, provided that those disputes were within the scope of the agreement. We find the above-quoted language of the Tenth Circuit equally applicable in the context of the copyright infringement claim in the instant case.

■ The court next addressed whether Coors' claims were within the scope of the agreement. The court determined that Coors' claims regarding confidentiality and proprietary information involved the Coors–Molson licensing agreement, and thus, the arbitration clause controlled that dispute. The court reasoned that Molson had gained access to the Coors information because of the parties' contractual relationship, and that under the terms of their contract, both parties had agreed to arbitrate claims arising from the contract. Likewise, Metro gained access to the copyrighted software because of the parties' contractual relationship under the licensing agreement. Under the terms of the licensing agreement, both parties agreed to arbitrate claims "arising out of or relating to" the licensing agreement. We find LDS' copyright infringement claim is arbitrable.

Courts in other jurisdictions have permitted arbitration of copyright infringement claims. *See, e.g., Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108 (2d Cir.1993) (Second Circuit upheld district court's ruling that broad language of songwriter contract, which required arbitration of " 'any and all differences, disputes or controversies arising out of this contract' . . ." permitted arbitrator to pass on the issue of rights to the underlying music); *Kamakazi Music Corp. v. Robbins Music Corp.,* 522 F.Supp. 125 (S.D.N.Y. 1981) (although dispute between parties to license agreement arose under Copyright Act, arbitrator was not precluded by public policy considerations from determining copyright infringement claims, where arbitration clause was broad enough to include the infringement claims made by plaintiff).[2] LDS has presented no convincing authority which, as a jurisdictional matter, would preclude the arbitrator from deciding the copyright infringement dispute.

The court is equally unpersuaded with LDS' argument that the arbitration clause should not be enforced because LDS terminated the License Agreement. LDS provides absolutely no authority for its propositions that termination of the License Agreement "thereby terminat[ed] the arbitration provision as well," and that "[t]he arbitration provision only governs contro-

---

**2.** LDS attempts to discount these cases by claiming, without any explanation, that they should be accorded little weight because they involved very "unusual" circumstances. LDS' Surreply at 3. *Kamakazi* is somewhat factually distinct insofar as the defendant in that case had previously agreed to arbitrate the dispute. The court however, determined, apart from this fact, that the arbitration clause was broad enough to include the copyright infringement claims. The pertinent language of the arbitration clause in *Kama-* *kazi* was virtually identical to the arbitration clause in the LDS–Metro license agreement. Our case is also somewhat distinct in that in *Kamakazi,* the complaint stated claims only under the Copyright Act, and did not mention breach of contract as a theory of liability, whereas here, LDS does raise breach of contract as a separate count in the complaint. We note that we do not rely solely on these cases in reaching our conclusion on this issue, but merely acknowledge them as additional supportive authority.

versies that occurred during the effective dates of the License Agreement." LDS' Response Brief at 5. To the contrary, the Tenth Circuit has recently held:

> Under the federal common law of arbitrability, an arbitration provision in a contract is presumed to survive the expiration of that contract unless there is some express or implied evidence that the parties intend to override this presumption .... Thus, when a dispute arises under an expired contract that contained a broad arbitration provision, courts must presume that the parties intended to arbitrate their dispute. This is so even if the facts of the dispute occurred after the contract expired. The presumption in favor of continuing arbitrability, however, disappears in either of two situations: first, if the parties express or clearly imply an intent to repudiate post-expiration arbitrability, and second, if the dispute cannot be said to arise under the previous contract.

*Riley Mfg. Co. Inc. v. Anchor Glass Container Corp.,* 157 F.3d 775, 781 (10th Cir.1998) (citations omitted).

■ Neither party has presented any facts negating the presumption that the arbitration provision survived the termination of the License Agreement. First, there is no evidence (nor did LDS even make the argument) that the parties "expressed or clearly implied an intent to repudiate post-expiration arbitrability." *Id.* Second, as we held *supra,* the dispute can be said to arise under the License Agreement. We conclude that the arbitration provision survived LDS' termination of the License Agreement.

LDS next argues that the language of the arbitration clause itself demonstrates that the parties did not intend to arbitrate copyright infringement issues. LDS asserts that the portion of the arbitration clause setting forth the qualifications of an appointed arbitrator does not mention competency to determine copyright infringement matters, and that such omission is evidence the parties did not intend to arbitrate such disputes. We are unconvinced by this reasoning.

The pertinent portion of the arbitration clause provides: "The arbitrator shall have a background in the computer software technology and licensing *and such other education and training to pass on the particular matter to be decided on."* (Emphasis added.). The underscored "catch-all" language suggests that the parties intended for the American Arbitration Association to appoint an arbitrator with whatever background and knowledge necessarily implicated by the issue at hand. The broad language certainly does not evince an intent to exclude copyright infringement issues from the possible realm of topics fit for determination by an arbitrator.

Next, LDS contends that only issues arising out of or relating to the *License Agreement* must be arbitrated. It attempts to create a distinction between issues arising out of or related to that agreement, and issues arising under the Code Maintenance Agreement, which does not have an arbitration clause. LDS maintains that its claim for breach of contract and judgment for amounts due under the Code Maintenance Agreement should not be subject to the arbitration clause in the Licence Agreement. LDS states "[s]ince an arbitration provision is notably absent in the Code Maintenance Agreement, arbitration of disputes involving the Code Maintenance Agreement was not contemplated by the parties." LDS' Response Brief at 4. The court is unpersuaded by plaintiff's constrictive approach.

We find the reasoning in *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455 (10th Cir.1995), instructive. There, the Tenth Circuit enforced arbitration, even though, as here, the party opposing arbitration argued that one of the contracts at issue did not contain an arbitration clause. In *ARW,* five of six joint venture agreements between the parties contained arbitration clauses. The sixth joint venture agreement (the "IFA agreement"), however, contained no arbitration clause. On appeal, the Tenth Circuit considered whether the district court erred in submitting disputes relating to the IFA agreement to binding arbitration. In affirming the district court, the Tenth Circuit quoted the district court's reasoning for subjecting disputes with respect to the IFA Agreement to arbitration:

While it is true that this agreement did not contain an arbitration clause, the IFA Agreement clearly relates to the on-going oil and gas ventures between the parties. Th[e arbitration provisions contained in the other five joint venture agreements are] clearly broad enough to encompass disputes with respect to the IFA Agreement.

*Id.* 45 F.3d at 1462 (citing district court's order at 5 (W.D.Okla. Dec. 10, 1993)). The Tenth Circuit noted the broad language of the five other joint venture agreements, which provided that all "disputes shall be subject to binding arbitration. Any matter in dispute which is not provided for in this agreement shall be settled by arbitration. . . ." *Id.*

The court in *ARW* recognized the strong federal policy favoring arbitration, and the presumption of arbitrability, particularly where the clause in question contains broad and sweeping language. *Id.* (citing *AT & T Technologies, Inc. v. Communications Workers of America,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The court then noted the Second Circuit had enforced an arbitration provision under similar circumstances:

. . . . In the analogous decision of *Associated Brick Mason Contractors v. Harrington,* 820 F.2d 31 (2d Cir.1987), a labor union argued that its duty to arbitrate under a collective bargaining agreement did not extend to disputes with respect to a separate memorandum of understanding, a document containing no arbitration clause. *Id.* 820 F.2d at 34. After noting the broad arbitration clause in the collective bargaining agreement, however, the Second Circuit refused to reverse the district court's decision that the arbitration clause extended to grievances relating to the separate memorandum. *Id.* 820 F.2d at 35–36.

*Id.*

In addition, the court observed that "the agreement to arbitrate need not be in a single document or writing." *Id.* (citing *Midland Tar Distillers v. M/T Lotos,* 362 F.Supp. 1311, 1313 (S.D.N.Y.1973)). In upholding the district court's determination that the "any matter in dispute" language was broad enough to cover any IFA Agreement disputes, the Tenth Circuit reasoned:

The arbitration clauses of the other joint venture agreements clearly covered all matters in dispute, including those arising out of the IFA Agreement. Because it cannot be said with "positive assurance" that the arbitration clauses in question are not susceptible of the district court's interpretation, we affirm the district court's ruling in this context.

*Id.*

■ Similarly, in the instant case, we conclude that the arbitration provision contained in the License Agreement is clearly broad enough to encompass all matters in dispute, including those involving the Code Maintenance Agreement. The broad language of the License Agreement mandates arbitration for "any controversy or claim arising out of or relating to this Agreement." As Metro aptly notes, "[t]here would have been no software code to maintain had Metro Canada not licensed the software from LDS, who installed and trained Metro Canada personnel pursuant to the License Agreement." Metro's Reply Brief at 11. As in *ARW* and *Harrington,* the contracts in this case are interdependent, and the disputes relate to the License Agreement. We conclude that any amounts due under the Code Maintenance Agreement are sufficiently related to the software sold, installed, and trained under the License Agreement as to trigger application of the arbitration requirement to both agreements.

In sum, we conclude that LDS has failed to overcome the presumption of arbitrability by demonstrating with "positive assurance" that "the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995). For the foregoing reasons, and because all doubts must be resolved in favor or arbitrability, we hold LDS's claims fall within the scope of the arbitration clause at issue.

IT IS THEREFORE ORDERED that the motion of defendant Metro Canada Logistics, Inc. ("Metro") to dismiss or stay this proceeding and enforce the arbitration agree-

ment entered into between the parties (Doc. # 17) is granted. The court hereby stays any further proceedings in this court, and directs the parties to proceed to arbitration.