VAN EKRIS & STOETT, INC., and Marshall Coffee Division of Balfour Maclaine International, Plaintiffs,

v.

S.S. RIO PARAGUAY, S.S. Rio Olivia, their engines, boilers, etc., Itaypyte S.P.L. and Empresa Lineas Maritimas Argentinas S.A., Defendants.

No. 80 Civ. 1806 (PNL).

United States District Court,
S.D. New York.

Nov. 1, 1983.

Donovan, Maloof, Walsh & Kennedy, David L. Maloof, Charles C. Goodenough, New York City, for plaintiffs.

Kirlin, Campbell & Keating, J. Scot Provan, New York City, for defendants.

## OPINION AND ORDER

LEVAL, District Judge.

This is an action by a purchaser and consignee of goods against the ocean carrier Empresa Lineas Maritimas Argentinas S.A. (ELMA), based on ELMA's bills of lading. The parties have stipulated to bifurcated trial of certain issues upon submitted documents and proofs. The question submitted for adjudication is whether an exculpatory clause in ELMA's bills of lading - exempted ELMA from liability for damage that occurred before the cargo came into ELMA's actual possession. This opinion constitutes the court's findings of fact and conclusions of law on that issue.

### I. *Facts*

On or about June 15, 1979, the plaintiffs contracted with Salvador Benega Mendoza (the shipper) of Asuncion, Paraguay to purchase ten shipments of coffee totaling 8,500 bags. Purchase was on C & F basis, which requires the buyer to pay upon presentation of documents showing that the goods have been placed in the hands of a carrier for prepaid shipment to the purchaser. The coffee was to be shipped from Asuncion to New York or New Orleans. Each of the shipments was covered by an irrevocable letter of credit which expressly permitted transshipment at Buenos Aires and was payable upon the presentation of certain documents including clean on board ocean bills of lading. Each letter of credit was by its terms subject to the Uniform Customs and Practice for Documentary Credit, International Chamber of Commerce Publication No. 290 (1974 Revision).

Mendoza arranged for the coffee to be shipped from Asuncion to Buenos Aires on a river craft, the Rio Paraguay, owned by Itaypyte S.P.L., a Paraguayan entity, which is not subject to jurisdiction here. Itaypyte issued clean bills of lading. Mendoza arranged with Paramundo, ELMA's agent in Asuncion, for transportation by ELMA from Buenos Aires to New York. While the cargo was on its way from Asuncion to Buenos Aires aboard the Rio Paraguay, Mendoza delivered to Paramundo Itaypyte's bills of lading for the river trip from Asuncion to Buenos Aires and Paramundo issued to Mendoza ELMA's bills of lading covering carriage from Asuncion to New York.

ELMA's bills of lading issued by Paramundo contained a number of pertinent provisions and notations.[1] The terms of carriage began as follows:

Received from the shipper, by Empresa Lineas Maritimas Argentinas ... the goods ... herein mentioned, in apparent good order and condition ... to be transported to the port of discharge named herein ...."

The vessel named at the head of the bills was the "Rio Gualeguay or substitute," and freight was shown as paid for both Asuncion to Buenos Aires and Buenos Aires to New York. Under the heading "Description of the Merchandise" was printed "Received on Board". The particulars of the cargo were typed in below, followed by this typewritten note:

Note: Merchandise loaded in Asuncion, Paraguay on board the vessel Rio Paraguay to be transshipped in Buenos Aires to the vessel Rio Gualeguay or substitute. The bills were executed at the bottom by the stamp and signature of ELMA.

The bills were executed at the bottom by the stamp and signature of ELMA. The terms of carriage written on the reverse included Clause 16 "Through Cargo and Transshipment":

In case the carrier issues a bill of lading covering transportation by a local or oth-

er carrier prior to the goods being delivered to or put into the physical custody of the carrier, it shall not be under any responsibility or liability whatsoever for any loss or damage to the goods occurring prior to or until the actual receipt or custody of the goods by it at the port or place of transshipment ....

The shipper Mendoza submitted plaintiff's ten letters of credit, together with ELMA's bills of lading, to his bank, which in turn presented them to the issuing banks. The issuing banks honored and paid the credits, charging plaintiff's account.

When the Rio Paraguay arrived in Buenos Aires, water was found in the cargo hold. The cargo was discharged, tallied, segregated and recoopered, then transported to ELMA's warehouse and subsequently shipped to the plaintiffs. Of the 8,500 bags originally shipped, 4,173 bags of coffee were in good condition, 1,422 bags had indications of staining, sewing or reconditioning and 2905 were missing.

## II. *Discussion*

Plaintiff sues to recover the insured value of the lost and damaged coffee. ELMA defends on the basis of Clause 16, which by its terms exculpates the carrier from liability where, as here, damage occurs before it takes actual custody of the cargo. Plaintiff asserts that because ELMA issued bills of lading acknowledging receipt of the cargo and thus enabled the shipper to draw down plaintiff's letters of credit, ELMA is estopped from disclaiming receipt and from invoking Clause 16. Defendant ELMA contends that its bills of lading do not indicate receipt of the cargo. It further contends that plaintiff did not rely on the bills as indicating receipt and that any such reliance, if it did occur, was unreasonable.

 I find that the plaintiff has sustained its contention that ELMA may not rely on Clause 16 for exoneration. ELMA issued bills of lading which on its face

---

**1.** The bills themselves were in Spanish; these quotations are from a translation provided by ELMA whose accuracy is unchallenged by plaintiff.

represented to the world that ELMA had received the cargo.

This representation results from the following: Under § 3(3) & (4) of the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. §§ 1300 et seq., the issuance of a bill of lading is "prima facie evidence of the receipt by the carrier of the goods". As exemplified by the terms of the letters of credit in this case which called for payment upon presentation of "clean on board ocean bills of lading", bills of lading are accepted in the commercial and banking world as virtually conclusive demonstration of the carrier's receipt of goods for transportation to a purchaser or consignee, triggering payment of the purchase price. ELMA's bills of lading furthermore, as noted above, explicitly listed the merchandise as "received on board" and recited that the goods "herein mentioned" were "received from the shipper, by Empresa Lineas Maritimas Argentinas ... in apparent good order and condition ... to be transported to the port of discharge ...."

■ Absent some notation on the bill of lading contradicting the ordinary assumption and the express acknowledgement of receipt, a carrier is on notice that its issuance of such a bill will be taken as assurance of its receipt.

ELMA contends that certain clauses and notations on these bills, taken together, effectively gave notice of its non-receipt. It points to the entry of "Rio Gualeguay or substitute" in the blank for "vessel", the typed note on the face that the merchandise was "loaded in Asuncion, Paraguay on board the vessel Rio Paraguay to be transshipped in Buenos Aires to the vessel Rio Gualeguay or substitute", and the terms of Clause 16 exempting it from liability for loss prior to its receipt of the goods "[i]n case the carrier issues a bill of lading covering transportation by a local or other carrier prior to the goods being delivered to or put into the physical custody of the carrier ...."

■ In my view, these clauses and notations do not convey the message that

ELMA argues. Even giving full effect to Clause 16 (despite its virtual concealment in the midst of endless small print on the back of the bills), it goes no further than to warn that there may be instances in which ELMA issues a bill covering local transportation prior to receipt. It does not warn that the bill in question was so issued. ELMA argues that such warning is completed by the typed notations on the face. I do not agree. These notations show only that the cargo was loaded on one vessel in Asuncion for transshipment to another in Buenos Aires.[2] They suggest in no way that the loading on board the Rio Paraguay did not constitute receipt by or for ELMA, which ELMA's bills of lading appear to acknowledge. Unless the reader of the bill is forearmed with the knowledge that the Rio Paraguay was not owned or operated by ELMA, consideration of these provisions fails to advise that the possible practice mentioned in Clause 16 had in fact taken place. The reader could properly infer that the goods were received in custody by the issuing carrier aboard *its* river vessel Rio Paraguay for transshipment to *its* ocean vessel at Buenos Aires. That is, in my view, the fairest reading of those provisions, taken together with the explicit acknowledgement of receipt.

■ Two further considerations reinforce this reading of the bills of lading—a principle of law, and a related matter of logical inference. The first is the principle that ambiguities in a contract of adhesion are to be construed against the drafter. *Mitsui & Co. Ltd. v. American Export Lines,* 636 F.2d 807 (2 Cir.1981) (a bill of lading is a contract of adhesion, and ambiguities should be resolved against the issuing carrier despite statutory authorization for limitation of liability); *see also Cabot Corp. v. S.S. Mormacsan,* 441 F.2d 476 (2 Cir.1971). Secondly even without the support of the rule of construction for contracts of adhesion, given the role played by bills of lading and the liabilities that can arise from their issuance, it is logical to assume that a carrier for its own protection

---

2. The shipper's employee testified only that the note "evidences the fact that the merchandise was being transshipped in Buenos Aires." Deposition of Dorila Ortega at 31.

would not issue a bill for goods not yet received without making a clear notation of the fact of non-receipt. The absence of a clear notation of non-receipt would justify a third party in concluding that the notation concerning the Rio Paraguay was consistent with ELMA's receipt for the goods.

ELMA's reliance on § 1307 of COGSA is misplaced. It is true this provision of the statute expressly permits a carrier to exempt itself from liability for damage to goods prior to the carrier's receipt. I do not deal with the question that would arise if ELMA in issuing the bills had in some sufficient fashion noted on the face its non-receipt of the goods and the applicability of Clause 16. The determinative point in this case is that the bills issued by the carrier gave no adequate notice that the goods were unreceived at issuance, calling into play the provisions of Clause 16. Cases upholding carrier exculpation under § 1307 have involved instances where the bill gave clear indication that the goods would be out of the carrier's custody for part of the carriage covered by the bill. *The Pioneer Land,* 1957 A.M.C. 50 (S.D.N.Y.1956); *El-Khateib v. Eurofighter,* 1980 A.M.C. 893 (S.D.N.Y.1979). *See also Mitsui & Co., supra.*

■ Since I find that the bills of lading showed receipt of the goods, ELMA is estopped from disclaiming receipt now on the grounds that it did not have actual custody. *See Portland Fish Co. v. States Steamship Co.,* 510 F.2d 628 (9 Cir.1974); *Demsey & Associates, Inc. v. S.S. Sea Star,* 461 F.2d 1009, 1015 (2 Cir.1972); *Westway Coffee Corp. v. M.V. Netuno,* 675 F.2d 30, 33 n. 3 (2 Cir.1982); *The Carso,* 43 F.2d 736 (S.D.N.Y.1930).

The estoppel on these facts does not impose unfairly severe consequences on the carrier. A carrier can fairly be expected to know when it issues a bill of lading whether it has received the goods. Here ELMA's

agent was well aware that the goods had not been received in ELMA's custody. There was evidence that the customary practice for ELMA's agent in similar circumstances was to send the bill of lading to Buenos Aires to be stamped "Merchandise on board" before release to the shipper. The failure either to follow that practice or to note the non-receipt with sufficient clarity misled the plaintiff and could and should have been avoided by ELMA's exercise of minimal precautions.

■ A bill of lading serves two distinct purposes. First, it is a contract between shipper and carrier fixing the terms of carriage. The second function of the bill of lading is quite different; it serves as a document of title showing that custody of goods has passed from shipper to carrier for transportation to the consignee; as such it triggers payment in international transactions. A shipper may reasonably wish to receive assurance of carriage before placing the goods in the carriers' hands and may therefore wish to conclude the contract of carriage in advance. But the carrier must be cautious lest the entrance into the contract of carriage prior to receipt place in commerce a commercial document which will be taken inaccurately as a receipt justifying payment. To protect innocent purchasers from this possibility, carriers must either withhold issuance of the bills until receipt, or if commercial reasons pertaining to the contract function of the bill call for its prior issuance, the carrier must be sure that its non-receipt is clearly signalled on the bill.

Given the degree of harm, loss and uncertainty which can predictably result from a carrier's failure to follow these precautions, and given the minimal difficulty or burden put upon the carrier by requiring them, the estoppel as against a party injured by reliance on the misleading bills seems clearly justified.[3]

---

3. The reasons justifying an estoppel in this case are far more persuasive than those found sufficient in *Encyclopaedia Britannica v. S.S. Hong Kong Producer,* 422 F.2d 7 (2d Cir.1969).

Although a carrier may well be unaware at the time of issuance of the bill whether the stowage of the ship will call for carriage above

or below deck, notice of carriage below deck is not a term upon which international commerce relies as authorization for payment, as is the apparent acknowledgment of receipt. Thus both in terms of burden on the carrier and of predictable reliance, this estoppel seems an *a fortiori* case.

This opinion does not carry any implication for a dispute between the carrier and the shipper who negotiated the bills of lading with knowledge of the fact that they were issued prior to ELMA's receipt. Such a party would not have been deceived or harmed by the misleading implication of the bills of lading and could claim no estoppel.

ELMA also argues that anyone familiar with coffee trading in Paraguay would understand that the bills of lading did not signify receipt. This argument is unsupported, but also it is irrelevant. As noted above payment was not made by plaintiff; it was made for plaintiff's account by New York banks as issuers of letters of credit. While there was vague evidence that some of the banks may have consulted plaintiff concerning the form of the "on board" notations before honoring the letters of credit, the evidence shows that the banks relied on the bills as signifying receipt.[4]

Nor does this opinion carry any implication for a dispute between ELMA and the Paraguayan bank to which Mendoza negotiated the bills of lading. ELMA suggests, although offering no proof, that fraud or recklessness may have been involved in that bank's acceptance of the letters of credit, since ELMA asserts that anyone familiar with local coffee trade in Asuncion would have understood that the bills of lading did not signify receipt by ELMA. Even assuming this was the case, it is irrelevant to the present action. Knowledge or fraud on the part of the presenting bank or its employee would not prevent the issuing banks from accepting the bills of lading at face value and honoring them at their customer's expense.

Nor does the foregoing discussion constitute a ruling or expression of opinion as to whether the documentation conformed to the letters of credit. The question, urged by the parties, whether the bills of lading were "on board", is not before me. I rule only that ELMA is estopped to deny receipt of the goods having issued bills of lading which appeared to acknowledge receipt and caused reliance on that apparent acknowledgement to plaintiff's detriment.

### III. *Conclusion*

ELMA's acknowledgement of receipt of plaintiff's cargo is binding on it, and it cannot now claim exculpation under Clause 16 on the grounds that it did not have actual custody.

SO ORDERED.

---

**4.** Evidence concerning the payment process was presented for two of the four issuing banks, Bankers Trust Company (issuer of three credits) and Manufacturers Hanover Trust Company (issuer of two credits). Four of the five bills of lading presented to them were initially turned down as not "on board" because the typewritten notation on the face of each bill was unsigned and undated. (Bank officials testified that this was an erroneous interpretation of Article 20 of the Uniform Customs and Practice for Documentary Credits (1974 Revision), International Chamber of Commerce Publication No. 290, since the bills bore a printed notation "received on board".) The bank employees then received telephonic authorization to pay on the credits, but the testimony was unclear whether the authorization came from plaintiffs or from other bank officials.