SIDERIUS, INC., Plaintiff,

v.

M.V. "IDA PRIMA," her
engines, boilers, etc.,

v.

NEWSER NAVIGATION, S.A., Columbia Shipmanagement, Ltd., Wil-Mar Shipping A/S and the Oceanus Mutual Underwriting Association, Defendants.

No. 83 Civ. 9029 (PNL).

United States District Court,
S.D. New York.

July 12, 1985.

Bigham Englar Jones & Houston, New York City, for plaintiff; William R. Connor, III, New York City, of counsel.

Kirlin, Campbell & Keating, New York City, for defendants; Enrico S. Sanfilippo, New York City, of counsel.

**918**

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Plaintiff Siderius, Inc. seeks to recover under ocean bills of lading for damage to three consignments of steel plate transported aboard defendant vessel, M.V. Ida I. Defendant Newser Navigation S.A. is the owner of the vessel. Defendants Wil-Mar Shipping A/S and Columbia Shipmanagement, Ltd., both Cyprus corporations, appear to be agents of Newser. Newser moves for summary judgment claiming that the action is time barred by the arbitration clause of the charter party which was incorporated by reference in the bills of lading.

The following facts appear to be undisputed. Siderius purchased steel plate on a CIF basis from an Italian steel mill, Nuova Italsider S.p.A. ("Italsider"). The steel was to be delivered to Chicago with payment due 90 days after the date of the bills of lading. Under the terms of the CIF agreement, the cost of insurance was included in the price and the buyer, Siderius, was required to pay Italsider the invoiced amount regardless of any damage during transportation. It appears that Italsider, and not Siderius, arranged for the ocean transportation of the goods.

On August 11, 1982, Wil-Mar, apparently as agent for Newser, entered into an agreement to let the Ida to charterer Sidermar di Navigacione, S.p.A.[1] Clause 26 of the charter party provided that:

> Any dispute arising under this Charter Party to be referred to Arbitration in London in the customary manner. The right of both parties to refer a dispute to Arbitration ceases 12 months after date of completion of discharge.... Where this provision is not complied with, claims shall be deemed to be waived and absolutely barred.

In August 1982, the shipment of steel at issue was loaded on the vessel and three bills of lading were issued to Italsider by the master of the vessel consigning the freight to Siderius. On the back of the bills of lading, the conditions of carriage provided that "All terms and conditions, liberties and exceptions of the Charty Party, dated as overleaf, are herewith incorporated."

The vessel completed discharge in Chicago on September 21 or 22, 1982. At the time of discharge, Siderius noticed some salt water leakage in the vessel's holds and concluded that the steel was probably damaged.

On September 24, 1982, Siderius telexed Columbia, the agent of Newser, stating that it intended to seize the vessel to obtain the necessary security and asking for the name of the owner's Protection and Indemnity (P & I) club representative (Plaintiff's Ex. C). Later that day, Lamorte Burns & Co. Inc., the owner's P & I club representative, contacted Siderius by phone. Lamorte Burns agreed to issue a Letter of Guarantee (or Undertaking) of the Oceanus Mutual Underwriting Association in the amount of $250,000 with a New York jurisdiction clause in consideration for Siderius' agreement not to seize the vessel. This agreement was memorialized by exchange of letters—one by plaintiff's attorney dated September 27, 1982 and one by Lamorte Burns dated September 29, 1982. (Plaintiff's Exhibits D & E). A year later on September 22, 1983, just before the expiration of COGSA's one year limitation period, Lamorte Burns confirmed in writing that it had "extended [plaintiff's] time in which to institute suit and/or arbitration on behalf of the [vessel] and her owners up to and including December 19, 1983" (Plaintiff's Ex. F).

This action was filed by Siderius on December 13, 1983. After December 19, 1983, defendant raised the contention that the action was barred by reason of failure to demand arbitration. Plaintiff then demanded arbitration.

The earlier promised letter of guarantee was eventually issued by Lamorte Burns on December 29, 1983.

---

1. According to an affidavit by Bruno Bertoni, Siderius' Director of Operations, Sidermar often arranges for the transportation of Italsider's shipments.

*Parties' Contentions:*

The owner Newser contends that the action is barred under the charter party's arbitration clause since no demand for arbitration was made within 12 months after discharge or within the extension granted by the owner's representative. It argues that since the charter party was incorporated into the bills of lading, Siderius, as assignee of the bills of lading, was bound by the arbitration clause in the charter party. Newser points to two provisions in the bills of lading which refer to the charter party. On the back of the bills of lading is the small print condition of carriage mentioned above stating: "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf are herewith incorporated." On the front of the bills a clause states "Freight payable as per charter-party dated 11/8/1982." Newser points to various decisions in this circuit, *e.g., Son Shipping Co. v. DeFosse & Tanghe,* 199 F.2d 687, 688 (2d Cir.1952); *Midland Tar Distillers, Inc. v. M/T Lotos,* 362 F.Supp. 1311, 1312–13 (S.D.N.Y.1973), in support of its argument that an arbitration clause in the charter party is incorporated in the bill of lading by the use of language similar to this.

In response, Siderius argues that the charter party was insufficiently incorporated into the bills of lading. It relies on English law, quoting an opinion of Lord Denning, *The Annefeld* (1971), holding that an arbitration clause is not incorporated into the bill of lading, absent express reference to the clause as incorporated.

Alternatively, Siderius contends that defendant waived its rights under the London arbitration clause by authorizing its agent to agree to a Letter of Guarantee with a New York jurisdiction clause. Newser argues in answer that the Letter of Guarantee stated it was binding only on the P & I Club and "is written without prejudice as to any defenses which the vessel or owners may have under the Bills of Lading and/or Charter Parties...."

*Discussion*

Long standing decisions in this circuit favor defendant's interpretation of the bill of lading. A charter party is deemed incorporated into a bill of lading and binding as against an assignee, even though the assignee is a stranger to the charter party if the bill of lading states that it is governed by the charter party and identifies it with sufficient specificity. See *State Trading Corp. of India v. Grunstad Shipping,* 582 F.Supp. 1523, 1524 (S.D.N. Y.), *aff'd without op.,* 751 F.2d 371 (2d Cir.1984); *Amoco Overseas Co. v. S.S. Avenger,* 387 F.Supp. 589, 593 (S.D.N.Y. 1975); *Lowry & Co. v. S.S. Le Moyne D'Iberville,* 253 F.Supp. 396, 397–98 (S.D. N.Y.1966), *appeal dismissed,* 372 F.2d 123 (2d Cir.1967); *compare United States Barite Co. v. M.V. Haris,* 534 F.Supp. 328, 329, 330 (S.D.N.Y.1982) (charter party not incorporated where reference to charter party in bill of lading did not specifically identify a particular charter party); *Cia. Platamon de Navegacion, S.A. v. Empresa Colombiana de Petroleos,* 478 F.Supp. 66, 68 (S.D. N.Y.1979) (no incorporation where charter party date is left out of bill of lading). Where a bill of lading so states that it incorporates a charter party, an arbitration clause in the charter party is held to bind the assignee of the bill of lading if the arbitration clause is not limited by its terms to disputes between the shipowners and the charterers. See *Amoco Overseas,* 387 F.Supp. at 593; *Midland Tar Distillers, Inc. v. M/T Lotos,* 362 F.Supp. 1311, 1314 (S.D.N.Y.1973); *Lowry & Co.,* 253 F.Supp. at 398; *compare Production Steel Co. of Illinois v. S.S. Francois L.D.,* 294 F.Supp. 200, 201–02 (S.D.N.Y.1968) (arbitration clause not binding on cargo owner where clause specifically limited to disputes between shipowner and charterer). Charter party arbitration clauses providing for arbitration of "any dispute arising under this Charter Party" have been held sufficiently broad to encompass a dispute between the carrier and the assignee of the bills of lading. *E.g., Amstar Corp. (American Sugar Div.) v. S.S. Union Australia,*

445 F.Supp. 940, 941 (S.D.N.Y.1978); *Lowry & Co.,* 253 F.Supp. at 398.

Notwithstanding these decisions, I believe there are at least three forceful arguments to be made against the carrier's position.

■ First, in my view, despite contrary authority, *e.g., Amstar Corp. (American Sugar Div.), supra,* 445 F.Supp. at 941–42; *Kurt Orban Co. v. S.S. Clymenia,* 318 F.Supp. 1387, 1390 (S.D.N.Y.1970), to oblige a U.S. consignee of freight under a bill of lading to proceed by foreign arbitration seems at odds with the well-recognized requirements of the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300 *et seq.*[2] That statute was designed to void overreaching clauses inserted by carriers in bills of lading, unreasonably limiting the carriers' liability or obstructing the freight claimants' ability to secure redress. *See Encyclopaedia Britannica, Inc. v. S.S. Hong Kong Producer,* 422 F.2d 7, 11–12 (2d Cir.1969), *cert. denied,* 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970). The Act establishes a variety of norms and in Section 1303(8), Title 46 U.S.C., expressly prohibits "any clause, covenant or agreement in a contract of carriage lessening [the carrier's] liability otherwise than as provided in [this Act]." This provision has been held to void a clause of a bill of lading requiring the consignee to litigate claims against the carrier in a foreign forum under foreign law. The Court of Appeals stated in *Indussa Corp. v. S.S. Ranborg,* 377 F.2d 200, 203–04 (2d Cir.1967) (*en banc*) that "from a practical standpoint, to require an American plaintiff to assert his claim only in a distant court lessens the liability of the carrier quite substantially, particularly where the claim is small. Such a clause puts 'a high hurdle' in the way of enforcing liability ... and thus is an effective means for carriers to secure settlements lower than if cargo could sue in a convenient forum" (Quoting G. Gilmore & C. Black, *The Law of Admiralty,* § 3–25 at 145 n. 23 (2d ed. 1975)).

The considerations are substantially similar where the bill of lading requires the consignee to arbitrate in a foreign country. The *Indussa* opinion suggested its holding might be different as to foreign arbitration, by reason of the strong policy of Federal Arbitration Act to enforce arbitration agreements. *Id.* at 204 n. 4. Gilmore and Black, however, have suggested that arbitration clauses incorporated into bills of lading which unduly restrict a cargo owner's right to relief seem to be "clearly out of line with *Indussa."* Gilmore & Black, *supra,* at 146 n. 23 (criticizing the decision in *Kurt Orban, supra,* which upheld a three-month limit on arbitration as nonviolative of COGSA). Moreover, in *AAACON Auto Transport v. State Farm Mutual Auto Insurance,* 537 F.2d 648, 655 (2d Cir.1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977), the Court of Appeals invalidated an arbitration clause in an interstate carrier's standard-form bill of lading which required a private shipper to arbitrate all disputes with the carrier in New York. It ruled that such a clause violated the provision of the Interstate Commerce Act, 49 U.S.C. § 20(11), that a "limitation of liability" in a bill of lading "is unlawful and void." The *AAACON* opinion purports to distinguish, but substantially undercuts, the suggestion of *Indussa* that such clauses in an ocean bill might be valid. Although the *AAACON* court suggested that equality of bargaining power might have a bearing, it must be recognized that the consignee under a bill of

---

**2.** Despite defendant's argument to the contrary, COGSA governs these bills of lading even though they may incorporate terms of the charter party. Although COGSA does not cover charter parties, it does govern bills of lading which incorporate provisions from a charter party and such provisions must accord with COGSA or they are void. *See* 46 U.S.C. § 1305 ("The provisions of this Act shall not be applicable to charter parties; but if bills of lading are issued in the case of a ship under a charter party, they shall comply with the terms of this chapter."); G. Gilmore & C. Black, *The Law of Admiralty,* § 4–10 at 218–19 (2d ed. 1975) ("however clearly they may be incorporated, ... any and all charter party terms, in order to have effect as bill of lading terms, must conform to Cogsa" except where the bill of lading remains in the hands of the charterer in which case Cogsa is inapplicable).

lading did not bargain with the carrier at all. If the policies of the Arbitration Act and COGSA conflict as to the enforcement of the arbitration clause, it seems to be a weak case for enforcement of the Arbitration Act against a party who did not agree to arbitrate, while it is a strong case for enforcing COGSA in favor of the consignee—an intended beneficiary of its provisions. I believe in those circumstances that the command of COGSA should be held to prevail over that of the Arbitration Act.

■ Defendants may argue that the arbitration clause does not deprive the cargo consignee of the right to bring his action in U.S. courts, and that these will be mindful of COGSA's proscriptions in passing on the enforceability of the arbitrators' award. But these arguments are unsubstantial, if not illusory. Although it is true the U.S. claimant may begin by lodging his action in a U.S. court, he cannot secure relief there. He must in addition (or instead) secure London counsel to prosecute an arbitration there. The expense alone of obtaining such representation will substantially assure that many smaller claims will be foregone. Furthermore, the cargo claimant will have little assurance that the arbitrators will enforce COGSA. Nor can he be confident that the U.S. court in which his action is brought will ensure that the arbitrators followed COGSA. Arbitrators' decisions are rarely explained. And courts do not vacate the arbitrators' awards, except on extreme grounds, such as misconduct or manifest disregard for the law, see *Dundas Shipping & Trading Co. v. Stravelakis Bros., Ltd.*, 508 F.Supp. 1000, 1003–04 (S.D.N.Y.1981), a showing not easily or often made, see *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir.) (Friendly, J.), *cert. denied*, 436 U.S. 948, 98 S.Ct. 2855, 56 L.Ed.2d 791 (1978); *A/S Siljestad v. Hide-*

ca *Trading, Inc.*, 541 F.Supp. 58, 60 (S.D.N.Y.1981), *aff'd.*, 678 F.2d 391 (2d Cir.1982) (per curiam). As a practical matter the cargo claimant will have little assurance that he will receive the benefits of U.S. law if required to proceed by London arbitration.

Although it is not an explict provision of COGSA that the claimant may pursue his claim in the U.S. courts, this is implicit in COGSA's relationship to sections 1331 and 1333 of the Federal Code, Title 28 U.S.C., giving the district courts jurisdiction of actions arising in admiralty and under the laws of the United States. That assurance implicitly served as the basis of the ruling in *Indussa, supra*, striking down a requirement of foreign litigation. I believe the result should be the same for a requirement of foreign arbitration imposed on the consignee of the bill of lading. *But see Kurt Orban Co. v. S.S. Clymenia, supra.*

Second, I have serious doubt, despite contrary decisional authority, *see, e.g., Amoco Overseas, supra; Lowry & Co., supra*, whether this bill of lading gave the consignee sufficient, meaningful notice that the bill of lading incorporated an arbitration requirement by reference to the charter party. No reference is made to arbitration in the bill of lading. Nothing alerts the consignee's attention to the possibility that the reference to the charter party may be a booby trap. The consignee is, of course, not provided with a copy of the charter party without demand.[3] Once again, recognizing the purpose of COGSA to provide for the cargo claimant a simple procedure to enforce his rights in the U.S. courts on reasonable terms, I question whether this oblique reference in the bill of lading should be deemed adequate incorporation of an unmentioned arbitration clause

---

**3.** I also have serious doubts as to whether the incorporation clause gave plaintiff adequate notice of what charter party was incorporated. The incorporation clause simply refers the reader to a clause on the front of the bill of lading which reads "freight payable as per charter-party dated 11/8/1982." There is no indication who are the signatories of the charter party.

This is unlike cases where the holder of the bill of lading was in a position to know the terms of the incorporated charter party, *e.g., Amoco Overseas Co., supra*, 387 F.Supp. at 593–94; *Lowry & Co. v. S.S. Nadir*, 223 F.Supp. 871, 873–74 (S.D.N.Y.1963); *Chilean Nitrate Sales Corp. v. The Nortuna*, 128 F.Supp. 938, 939 (S.D.N.Y.1955).

in a charter party to which the consignee is a stranger.[4]

Finally, I question whether the arbitration clause, by its terms, applies to disputes arising under the bill of lading. The charter party states that disputes "arising under this Charter Party" shall be arbitrated in London. As seen from the viewpoint of the consignee of freight, the dispute does not arise under the charter. He has no interest in the charter, which governs the business relationship between the vessel owner (or disponent owner) and the charterer. He would view the bill of lading as the document upon which his rights are founded. Thus, even in the unlikely event that the consignee were aware of the arbitration clause in the charter party, in my view he would not understand it to cover his claim for shortage or damage to the cargo covered by his bill of lading. But see *Lowry & Co. v. S.S. Le Moyne, supra.*

For the reasons argued above, I would undertake, in an appropriate case, a reexamination of the lines of authority on which defendants here rely.

██ I need not resolve those issues because it appears that the owner gave up whatever right it may have had to compel arbitration by the subsequent agreements it made with plaintiff. First, in September of 1982, in consideration of plaintiff's forebearing the seizure of the vessel, the owner agreed through Lamorte Burns to give a Letter of Guarantee of the underwriters with a *New York jurisdiction clause.* Then, a year later, in order to induce the plaintiff to forebear bringing action within the one year time limit, Lamorte Burns "on behalf of the M.V. Ida Prima and her owners" signed its agreement to plaintiff's letter extending the time "for suit and/or

arbitration" up to December 19, 1983. Finally, Lamorte Burns' $250,000 Letter of Guarantee (delivered after the lawsuit had commenced) was issued with explicit reference to this litigation in the Southern District of New York and included a promise that the "claim of owner of the "Ida I" would be filed in this suit." The inference is that, by these contracts, the owner, through its representative, extended to plaintiff agreement that the dispute might be conducted in a New York court, as well as by London arbitration.

I would add that, even if there were doubt as to whether the new agreements conferred this right by their express terms (which are circumspect), plaintiff would have a strong argument of equitable estoppel requiring this construction, since the owner's (or representative's) conduct induced plaintiff to prejudice its position by representations implying the sufficiency of New York jurisdiction and never mentioned the contention that arbitration was required until after the expiration of plaintiff's time to demand arbitration. See *Portland Fish Co. v. States Steamship Co.,* 510 F.2d 628, 633 (9th Cir.1974); *Demsey & Associates v. S.S. Sea Star,* 461 F.2d 1009, 1015 (2d Cir.1972); *Van Ekris & Stoett, Inc. v. S.S. Rio Paraguay,* 573 F.Supp. 1475, 1479 (S.D.N.Y.1983), *aff'd without op.,* 738 F.2d 419 (2d Cir.1984).

Defendant makes a frivolous argument that Lamorte Burns' actions did not bind the owner. The argument depends on the inclusion of a clause in the December 29, 1983 Letter of Guarantee stating:

This letter is written entirely without prejudice as to any rights or defenses which the said vessel or owners may have under the covering bills of lading and/or charter parties and/or statutes in

---

**4.** It should be noted that the only Court of Appeals decision on which defendant relies, *Son Shipping Co. v. De Fosse & Tanghe,* 199 F.2d 687 (2d Cir.1952), is weak authority for these facts because that case dealt with whether a charter party arbitration clause incorporated into a bill of lading is binding against the *shipowner,* who was a party to the charter party. See also *Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503, 506 (2d Cir.1965)

where the Court of Appeals explained "the rule in this circuit is that a holder of a bill of lading which specifically refers to a charter party and in unmistakeable language incorporates the charter party's arbitration section can compel *a party to the charter party* to arbitrate a dispute which comes within the scope of the arbitration provision" (emphasis added) (citing *Son Shipping Co.*).

effect, none of which is to be regarded as waived.

■ There are several answers: first, this letter was not written until after the fact. A year earlier plaintiff had already foregone its right to seize the vessel; three months earlier, plaintiff had foregone suit within the year limitation; and 10 days earlier, plaintiff had permitted the extension period to expire without commencing arbitration. Never before had it been suggested to plaintiff that Lamorte Burns' actions were not binding on the owner. To the contrary, the owner's agent Columbia initially caused Lamorte Burns to contact plaintiff with a view to negotiating the forebearance to seize the vessel, and Lamorte Burns acknowledged in the time extension letter of September 21, 1983, that the extension was granted "on behalf of the [vessel] and her owners." It would be outlandish for the owner to claim that the *suit* was untimely since the owner had never agreed to an extension, and it does not so claim. Nor can it claim that the other provisions to which Lamorte Burns agreed on its behalf were not binding on it.

■ The implication of the clause quoted is that the owners should not be deemed to have waived "any rights or defenses" other than those which they agreed, through Lamorte Burns, to give up.

■ Plaintiff has not moved for summary judgment on the issue of its freedom from the arbitration clause of the charter party. Nonetheless, the making of a motion for summary judgment exposes the moving party to the risk that summary judgment will be granted against him, if the submissions make clear that there is "no genuine issue as to any material fact and that the [adverse] party is entitled to judgment as a matter of law." Rule 56(c). See *Project Release v. Prevost,* 722 F.2d 960, 969 (2d Cir.1983) (trial court "may grant summary judgment to a non-moving party, if no genuine issues of material fact have been shown"); see also 6 J. Moore, *Moore's Federal Practice,* ¶ 56.12 at 331–32 (2d ed. 1985) and cases cited therein. The present record would seem to suggest

judgment in favor of the plaintiff on the question of the timeliness and appropriateness of its institution of suit in this court without need to arbitrate in London. Given the customary manner of such dealings and the evidence already received, it is unlikely that further evidence will illuminate the construction of Lamorte Burns' agreements (although I note reference in the extension letter of September 21, 1983, to a telephone conversation of September 19, 1983).

It is also likely that judgment on the meaning and effect of such a contract can as well be entered summarily as after trial. The parties are notified that the court will consider whether judgment should be entered in plaintiff's favor on this limited question. Any further evidence to be considered on the issue, including affidavits, depositions, exhibits or other documents shall be submitted within 60 days.

SO ORDERED.