CONTINENTAL FLORIDA
MATERIALS, INC.,
Plaintiff,

v.

M/V "LAMAZON," her tackle, equipment and appurtenances, in rem Alesford Shipping, Ltd., Defendant, omitted

No. 03–60072–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Feb. 25, 2004.

Christian David Keedy, Aran Corea & Guarch, Miami, FL, for Continental Florida Materials, Inc., plaintiff.

Stephen D'Oench Field, Fowler Rodriguez & Chalos, Coral Gables, FL, for M/V Lamazon, her tackle equipment, and appurtenances, in rem, defendant.

Andrew Warren Anderson, Robert Donald Tracy, Houck Hamilton & Anderson, Miami, FL, for Alesford Shipping, Ltd., claimant.

## ORDER DENYING MOTION TO STAY PENDING ARBITRATION AND GRANTING MOTION TO ENJOIN ARBITRATION

MORENO, District Judge.

The Plaintiff, Continental Florida Materials, brought this admiralty suit after it received a shipment of water-damaged concrete that had been transported aboard the Defendant M/V Lamazon. The Plaintiff alleges that the M/V Lamazon failed to exercise reasonable care when transporting the cargo, and that the aforesaid water damage occurred while the concrete was in the M/V Lamazon's sole care and custody. The Claimant, Aylesford Ltd., filed a notice claiming sole ownership of the M/V Lamazon and entered a limited appearance in this suit pursuant to Fed.R.Civ.P. E(8). This Court has jurisdiction over this cause pursuant 28 U.S.C. § 1333 and Fed. R.Civ.P. 9(h).

Before the Court are the Claimant Aylesford's Motion to Stay Pending Arbitration (D.E. No. 45), filed on *March 7, 2003*. Plaintiff Continental Florida Materials' Motion to Enjoin Arbitration (D.E. No. 48), filed on *March 24, 2003*; Claimant's Supplemental Memorandum in Support of the Motion to Stay and Compel Arbitration (D.E.73), filed on *June 27, 2003*; and Plaintiff's Supplemental Memorandum in Opposition to Motion to Stay

Pending Arbitration and in Support of Motion to Enjoin Arbitration (D.E. No. 82), filed on *July, 15, 2003*. Because the bill of lading signed by Continental Florida Materials does not incorporate the arbitration agreement from the voyage charter party, the Court DENIES Aylesford's Motion to Compel Arbitration and GRANTS Continental Florida Materials' Motion to Enjoin Arbitration.

## I. FACTUAL BACKGROUND

Plaintiff Continental Florida Materials had an ongoing contract with a company named H.C. Trading, Incorporated ("HC Trading") to purchase bulk quantities of grey Portland cement. According to the terms of the agreement, HC Trading made arrangements to have the concrete shipped from Slite, Sweden to Port Everglades, Florida. Further, the agreement provided that Continental Florida Material would bear the risk of loss once the concrete was loaded onto the shipping vessel. Between February 2002 and November 2002, Continental Florida Materials received nine shipments of concrete, and the parties apparently had no disagreements regarding the condition of the concrete or the terms of shipment.

This dispute arose in December 2002 when Continental Florida Materials ordered 36,000 metric tons of cement from HC Trading. To facilitate the shipment of this concrete, HC Trading entered into a voyage charter party[1] with a company named ED & F Man. Pursuant to the terms of the voyage charter party, the concrete was to be shipped from Slite, Sweden to Port Everglades, Florida aboard the M/V Lamazon. The bill of lading for the December 2002 shipment

indicates that the concrete was "[s]hipped at the port of loading in apparent good order and condition." Nonetheless, when the shipment of cement arrived in Port Everglades, Continental Florida Materials discovered that water had leaked into the hull of the ship, thereby damaging the concrete inside.

Shortly thereafter, Continental Florida Materials brought this suit *in rem* against the M/V Lamazon on January 21, 2003. Continental Florida Materials alleged that "while en route from the port of loading to the port of discharge ...the vessel failed to properly care for the cargo and it sustained water damage in an amount not to exceed $1,000,000 dollars." Complaint ¶ 8. The Complaint further alleged that the "water damage arose as a result of the fault and/or errors and omissions of the vessel in its care and custody of the cargo." Complaint ¶ 9.

Aylesford, Ltd. ("Aylesford"), the sole owner of the M/V Lamazon, made a limited appearance in the suit and subsequently filed a Motion to Stay Pending Arbitration (D.E. No. 45) on *March 17, 2003*. Aylesford contends that Continental Florida Materials is bound to arbitrate its maritime claims in London. To support this assertion. Aylesford points to the "Conditions of Carriage" listed on the back side of the bill of lading. The "Conditions of Carriage" provide that "all terms, conditions, liberties, and exceptions of the Charter Party, dated as overleaf, *including the law and arbitration clause*, are herewith incorporated." Aylesford cites another clause in the bill of lading, which indicates that "freight [is] payable as per CHARTER party dated ——." Notably, the par-

---

1. A charter party is a "contract by which a ship, or a principal part of it, is leased by the owner ...[or] a special contract between a shipowner and charterer, esp, for the carriage of goods at sea." Black's Law Dictionary 229 (7th ed.1999). One specific type of charter party, called a voyage charter party, is "a charter under which the shipowner provides a ship and crew, and places them at the disposal of the charterer for the carriage of cargo to a designated port." *Id.*

ties did not write a date into this blank space. Moreover, the date of the charter party is not listed anywhere on the "overleaf," or front side of the bill of lading. Nonetheless, Aylesford claims that these two clauses in the bill of lading are sufficient to incorporate the following arbitration clause from the voyage charter party between HC Trading and ED & F Man:

> This charter party shall be governed by English law and any dispute arising out of this charter party shall be referenced to arbitration in London, one arbitrator being appointed by each party … On the receipt by one party of the nomination in writing of the other party's arbitrator, that party shall appoint their arbitrator within 14 days, failing which the decision of the single arbitrator appointed shall apply. ED & F Man/ HC Trading Voyage Charter Party, Clause 41.

Continental Florida Materials responded by filing a Motion to Enjoin Arbitration (D.E. No. 48) on *March 24, 2003*. In that Motion, Continental Florida Materials emphasized that the voyage charter party was merely a private carriage agreement between two non-parties: HC Trading and ED & F Man Shipping. Indeed, Continental Florida Materials contends that it is a stranger to the voyage charter party and, therefore, cannot be bound by the arbitration provision included therein. Similarly, Continental Florida Materials contends that Aylesford was not a signatory to the voyage charter party and, therefore, does not have standing to enforce its mandatory arbitration provision.

Continental Florida Materials further argues that the incorporating provisions in the bill of lading are fatally ambiguous. Continental points out, for example, that the bill of lading does not identify the date of the charter party that it purports to incorporate. This omission is significant because the "Conditions of Carriage" indicate that the Bill of Lading incorporates the "Charter Party, *dated as overleaf.*" Continental Florida Materials argues that this omission caused actual confusion because the M/V Lamazon was under three separate charter parties at the time of the disputed shipment. Indeed, Aylesford Ltd. bareboat chartered[2] the M/V Lamazon to a company named Lamazon Shipping, Ltd. which, in turn, time chartered[3] the vessel to ED & F Man Shipping Ltd. Thereafter, ED & F Mann voyage chartered the vessel to HC Trading International, Inc. Because the M/V Lamazon was under three separate charter parties, Continental Florida Materials argues that it was critical to identify the date of the charter party that was purportedly incorporated into the bill of lading. Without such a date reference, Continental Florida Materials claims it was unable to determine which of the three charter parties was being incorporated.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") authorizes the federal courts to stay an admiralty proceeding and compel the parties to submit the dispute to arbitration. Federal Arbitration Act. 9 U.S.C. §§ 1–16

---

**2.** A bareboat charter, also known as a demise charter, is "a charter under which the shipowner surrenders possession and control to the charterer, who then succeeds to many of the shipowner's rights and obligations." Black's Law Dictionary 228. Under a bareboat charter "the shipowner provides the ship, and the charterer provides the personnel, insurance, and other materials necessary to operate it." *Id.*

**3.** A time charter is "a charter for a specified period, rather than for a specific task or voyage; a charter under which the shipowner continues to manage and control the vessel, but the charterer designates the ports of call and the cargo carried." Black's Law Dictionary 229.

(1999). Section 2 of the FAA provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... *shall be valid, irrevocable, and enforceable,* save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA explains that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for· such agreement, would have jurisdiction under Title 28." 9 U.S.C. § 4. Section 4 also described the court's authority to issue "an order directing that such arbitration proceed in a manner provided for in such agreement." *Id.*

The Supreme Court has explained that Congress' purpose in enacting the FAA "was to reverse the longstanding judicial hostility to arbitration agreements .... and to place arbitration agreements upon the same footing as other contracts." *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 288–89, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002). Accordingly, the "Supreme Court has interpreted [Section] 2 of the FAA as 'a congressional declaration of a liberal federal policy favoring arbitration agreements.'" *Davis v. Southern Energy Homes, Inc.,* 305 F.3d 1268, 1273 (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). In fact, the Supreme Court has emphasized that courts must "rigorously enforce agreements to arbitrate," *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), and that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927,

74 L.Ed.2d 765 (1983). At the same time, the courts "should not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House,* 122 S.Ct. at 764.

## III. APPLICATION AND ANALYSIS

### A. Whether the Bill of Lading Incorporates the Arbitration Clause from the Voyage Charter Party

The sole issue before the Court is whether the bill of lading issued by HC Trading to Continental Florida Materials incorporates the arbitration provision contained in the voyage charter party between HC Trading and ED & F Man. It is a well-settled principle of maritime law that "the terms of a charter party, including an arbitration clause, may, by appropriate reference. be incorporated into a bill of lading." *Coastal States Trading, Inc. v. Zenith Navigation S.A.,* 446 F.Supp. 330, 338 (S.D.N.Y.1977). ' *See accord Thyssen, Inc. v. Calypso Shipping Corp., S.A.,* 310 F.3d 102, 107–08 (2nd Cir.2002); *Son Shipping Co., Inc. v. De Fosse & Tanghe,* 199 F.2d 687, 688 (2nd Cir.1952); *Steel Warehouse Co., Inc. v. Abalone Shipping Ltd. of Nicosai,* 141 F.3d 234, 237 (5th Cir.1998); *Siderius, Inc. v. M.V. Ida Prima,* 613 F.Supp. 916, 919 (S.D.N.Y.1985); *Lowry & Co. v. S.S. Nadir,* 223 F.Supp. 871, 873–74 (S.D.N.Y.1963). To determine whether a bill of lading incorporates a charter party, the federal courts typically engage in a two-step analysis. Under this analysis, the courts will find incorporation where "the holder of the bill of lading has either actual or constructive notice of the incorporation" *and* "the bill clearly refers to the charter party." *Midland Tar Distillers, Inc. v. M/T Lotos,* 362 F.Supp. 1311, 1313 (S.D.N.Y.1973) (*emphasis added*) (*citing Son Shipping Co.,* 199 F.2d at 688; *Lowry,*

223 F.Supp. at 871; *Michael v. S.S. Thanasis,* 311 F.Supp. 170, 173 (N.D.Cal. 1970)).

### 1. Continental Florida Materials Had Actual Notice that the Bill of Lading Incorporated the Arbitration Provisions from a Separate Charter Party

The Court must begin its analysis by asking whether Continental Florida Materials had actual or constructive notice that it would be bound by an arbitration clause contained in a separate document. *Midland Tar Distillers, Inc.,* 362 F.Supp. at 1313. Continental Florida Materials emphatically contends that "it had no notice from the bill of lading of the identity of any charter party requiring arbitration." (Plts. Motion to Compel Arbitration at 3.) This argument lacks credibility, and must be rejected out-of-hand. The bill of lading clearly states that "all terms, conditions, liberties, and exceptions of the Charter Party ... *including the law and arbitration clause,* are herewith incorporated." At bare minimum, this language put Continental Florida Materials on notice that some, if not all, of its legal claims would be subject to arbitration. After Continental Florida Materials was put on such "inquiry notice," it should have sought clarification if it was uncertain about the scope or enforceability of the arbitration clause. In short, the Court concludes that Continental Florida Materials had actual notice that its claims would be subject to arbitration.

### 2. The Bill of Lading Does Not "Clearly Refer" to the Charter Party Because It Does Not Identify the Date of the Charter Party It Purports to Incorporate

In the second step of the analysis, the Court must determine whether the bill of lading "clearly refers" to the voyage charter party it purports to incorporate. *Midland Tar Distillers, Inc.,* 362 F.Supp. at 1313. Numerous federal courts have addressed this issue, and after reviewing the relevant case law, one common principle emerges: The courts are extremely reluctant to find that a bill of lading incorporates a charter party where, as here, the bill of lading does not clearly identify the date of the charter party it purports to incorporate. *See, e.g., United States v. Cia. Naviera Continental, S.A.,* 202 F.Supp. 698, 699–701 (S.D.N.Y.1962) (finding no incorporation where the charter party date was omitted from bill of lading); *Southwestern Sugar & Molasses Co. v. The Eliza Jane Nicholson,* 126 F.Supp. 666, 668 (S.D.N.Y.1954) (holding that the bill of lading did not incorporate the charter party where the charter party date was left blank); *Industria E. Comercio De Minerios, S. A. v. Nova Genuesis Societa Per Azioni Per L'Industria et il Commercio Maritimo,* 172 F.Supp. 569, 575–76 (E.D.Va.1959) (finding no incorporation where date of charter party was left blank). On the other hand, the federal courts have consistently found incorporation where the bill of lading clearly identifies the date of the charter party. *See Steel Warehouse Co.,* 141 F.3d at 237; *Son Shipping Co.,* 199 F.2d at 688; *Lowry & Co.,* 223 F.Supp. at 872–74; *Alucentro Div. Dell'Alusuisse Italia, S.P.A. v. The M/V Hafnia,* 785 F.Supp. 155, 156 (M.D.Fla. 1991); *Mitsubishi Shoji Kaisha Ltd. v. MS Galini,* 323 F.Supp. 79, 82–84 (S.D.Tex.1971); *Associated Metals and Minerals Corp. v. M/V Venture,* 554 F.Supp. 281, 282–83 (E.D.La.1983).

In this case, the bill of lading does not specifically identify the date of the voyage charter party it purports to incorporate. The "Conditions of Carriage," listed on the back side of the bill of lading, provide that "all terms, conditions, liberties, and exceptions of the Charter Party, *dated as overleaf,* including the law and arbitration clause, are herewith incorporated." The

problem is that the date of the charter party does not appear anywhere on the "overleaf," or the front side of the bill of lading. The front side of the bill of lading merely provides "freight payable as per CHARTER–PARTY dated _____." Furthermore, the parties failed to fill in the blank space that should have been used to identify the date of the charter party.

In these circumstances, the aforementioned case law indicates that the Court should be extremely reluctant to find that Continental Florida Materials, as cosignee of the bill of lading, is bound by the arbitration provisions in the voyage charter party. *See Coastal States Trading, Inc.,* 446 F.Supp. at 338 ("an incomplete or inaccurate reference to a charter party may prove insufficient to incorporate the charter party into the bill of lading"). The omission of the charter party date is particularly troublesome where, as here, the M/V Lamazon was subject to three separate charter party agreements at the time of the disputed shipment. Indeed, Continental Florida Materials argues that "it had no idea which charter party was alleged to be incorporated into the bill of lading." (Reply Mem. in Support of Mot. To Enjoin at 2.)

Aylesford Ltd. has, however, located a handful of cases where federal court found incorporation despite the fact that the bill of lading failed to specifically identify the date of the charter party. In *Coastal States Trading,* for example, the bill of lading provided that "[a]ll conditions and exceptions of the charter party being considered embodies in this bill of lading," but did not mention the charter party date. 446 F.Supp. at 330. The court recognized that "the bare language of the document itself might leave ambiguity as to which charter party was meant to be incorporated thereby." *Id.* at 338. Nonetheless, the Court found unique factual circumstances that justified incorporation. Indeed, an employee of the cosignee, the party attempting to avoid arbitration, unequivocally admitted that "the reference to the charter party in the bill of lading was meant to refer to the voyage charter, rather than the time charter with Zenith." *Id.* at 339. Thus, the parties knew which charter party was being incorporated, and there was no reason for the Court to disregard the parties" clear contractual intent. *See accord State Trading Corp. of India v. Grunstad Shipping Corp.,* 582 F.Supp. 1523, 1524 (S.D.N.Y.) ("where there is no confusion whatsoever concerning who in fact was the charterer on this voyage, or which charter party governed the rights of the charterer via-a-vis the shipowner, an incorporation clause may effect incorporation even though it does not contain the names of the signatories or the date or place of the making of the charter party") (internal quotations omitted).

This case is factually distinguishable from *Coastal States Trading* and *State Trading Corp of India.* As was previously mentioned, Continental Florida Materials has alleged that "it had no idea which charter party was alleged to be incorporated into the bill of lading." (Reply Mem. in Support of Mot. To Enjoin at 2.) In fact, five employees of Continental Florida Materials have testified that they had no knowledge whatsoever of a charter party being incorporated into the bill of lading. Further, various employees of the voyage charterer, HC Trading, have testified that Continental knew nothing about the terms of the voyage charter party that was allegedly incorporated into the bill of lading. Thus, the unique factual circumstances of *Coastal States Trading* are not present in this case.

Aylesford also cites *Thyssen, Inc. v. M/V Markos N,* No. 97 CIV 6181(MBM), 1999 WL 619634 at *1 (S.D.N.Y. Aug. 16, 1999), to support the proposition that a

charter party can be incorporated into a bill of lading even if there is no specific date reference. For two reasons, Aylesford's citation of *Thyssen* is misleading. First, the bill of lading in *Thyssen* included a specific and unambiguous reference to the "CHARTER PARTY dated January 18, 1997." *Id.* Second, the party attempting to avoid arbitration had previously contacted the shipping company to request a copy of the charter party that had been incorporated into the bill of lading. *Id.* The *Thyssen* court concluded that these two facts, taken together, made it clear that the cosignee knew which charter party had been incorporated into the bill of lading. *Id.* at *3.

Quite obviously, this case is distinguishable from *Thyssen*. First, the bill of lading issued by HC Trading did not identify the date of the charter party it sought to incorporate. Second, Continental Florida Materials did not request a copy of the voyage charter party, or otherwise provide any indication that it was aware of the incorporated document.

Finally, Aylesford cites *Midland Tar Distillers*, 362 F.Supp. 1311 (S.D.N.Y. 1973), a case that seems to depart from the well-established legal principles cited in the preceding paragraphs. In *Midland Tar Distillers*, the bill of lading did not identify the date of the charter party, but the court nonetheless found incorporation. *Id.* at 1312. In reaching this conclusion, the court found a special circumstance in that "the bill ... names the plaintiff both in the 'incorporation clause' and elsewhere, thereby affording it sufficient notice of the terms incorporated." *Id.* at 1313.

There are two reasons that the Court declines to follow the reasoning from *Midland Tar Distillers*. First, *Midland Tar Distillers* involved special factual circumstances that are not present here. The bill of lading in this case does not name Continental Florida Materials in the incorpo-

ration clause. Second, the decision in *Midland Tar Distillers* is arguably inconsistent with numerous other cases decided in the same district and elsewhere. *See, e.g., United States v. Cia Naviera Continental*, S.A., 202 F.Supp. 698; *Southwestern Sugar & Molasses Co.*, 126 F.Supp. at 666.

Notwithstanding the foregoing analysis. Aylesford presents two additional argument to prove that Continental Florida Materials knew which of the three charter parties was being incorporated into the bill of lading. First, Aylesford directs the Court's attention to the "shipper's description of goods" in the bill of lading, which includes the following notation: SCAC EDFM211202 001. Aylesford explains that this "SCAC Code," issued by the National Motor Freight Traffic Association, is a unique acronym used to identify companies in the maritime transportation industry. The first four letters of the SCAC code—"EDFM"—identify the voyage charterer "ED & F Man." Further, the numerical digits—211202—indicate that the Master of the M/V I amazon executed the bill of lading on December 21, 2002.

The significance of the SCAC is not intuitively obvious. Nonetheless, Aylesford argues that the SCAC Code eliminated any potential confusion regarding which of the three charter parties was being incorporated into the bill of lading. Aylesford explains, for example, that ED & F Man—whose acronym is contained in the SCAC Code—was not a party to the bareboat charter. Thus, Aylesford argues that the parties could not have intended to incorporate the bareboat charter. Further, Aylesford argues that HC Trading was not a party to the time charter and had no authority to incorporate that document in the bill of lading. Using this process of elimination, Aylesford contends that both parties knew that the bill of

lading incorporated the voyage charter party, as opposed to the bareboat charter or the time charter.

The Court must reject Aylesford's creative attempt to salvage the otherwise defective incorporating references in the bill of lading. The preceding paragraph makes it clear that Continental Florida Materials would have to make a number of complex deductions to glean any meaning from the SCAC Code. There is no evidence in the record that Continental Florida Materials understood the SCAC Code, or appreciated its significance. In fact, Continental's general manager testified that he did not know what the SCAC Code meant. (Supplemental Memorandum in Support of Motion to Stay Pending Arbitration at 3.) Thus, the Court cannot conclude that the SCAC Code eliminated the confusion surrounding the bill of lading.

Aylesford's next arguments is much more persuasive. In essence, Aylesford explains that it engaged in an extensive course of dealings with Continental Florida Materials, and that through this course of dealing Continental Florida Materials must have learned which of the charter party agreements was incorporated into the bill of lading. Aylesford explains, for example, that Continental Florida Materials accepted nine shipments of concrete from HC Trading prior to this dispute. After each delivery, Continental Florida Materials received an invoice from HC Trading in which it was charged $8.60 per metric ton for freight. Because each bill of lading specified "freight per charter party," the parties should have known that the $8.60 freight rate was derived from one of the three charter parties. It is not mere coincidence, Aylesford contends, that Clause 49 of the voyage charter party specifies a freight rate of exactly $8.60 per metric ton. Thus, Aylesford contends that Continental Florida Materials should have known that it was the voyage charter par-

ty, not the bareboat charter or time charter, that was incorporated into the bill of lading.

This argument, like the last, is not sufficient to overcome the omission of the charter party date from the bill of lading. Continental Florida Materials claims that it negotiated with HC Trading a flat price of $40.80 per metric ton of concrete. This price included the cost of the cement, as well as the freight charged by the ocean going vessel. For that reason, Continental never had any reason to analyze or verify the separate freight charges listed in the periodic invoices from HC Trading. Accordingly, Continental would have no reason to match the freight charges with the underlying voyage charter party.

For all of the foregoing reasons, the Court concludes that the bill of lading did not incorporate the arbitration provision from the voyage charter party between HC Trading and ED & F Man. The reasoning is twofold. First, the federal courts have consistently held that a bill of lading does not incorporate a charter party where the bill of lading contains incomplete or inaccurate incorporating references. Second, the Court notes that Aylesford is "at fault" because it failed to fill in the date on the bill of lading. Fairness dictates that Aylesford should bear the consequences of its own mistake.

## IV. THIRD–PARTY BENEFICIARY

As an alternative basis to support its Motion to Compel Arbitration, Aylesford relies on contract law principles related to third-party beneficiaries. The argument is fairly simple. Aylesford contends that Continental Florida Materials was the intended beneficiary of the voyage charter party between HC Trading and ED & F Man. Indeed, Continental Florida Materials entrusted HC Trading with the responsibility to arrange maritime shipping

on its behalf. The resulting voyage charter party between HC Trading and ED & F Man was designed to confer a direct and exclusive benefit on Continental Florida Materials. In fact, Aylesford contends that Continental Florida Materials' claim for damages is derived solely from the shipping arrangement described in the voyage charter party. Aylesford contends that Continental Florida Materials should not be permitted to accept the benefits of the voyage charter party without also accepting its burdens.

Aylesford supports its argument by citing Judge King's decision in *Interpool Limited v. Through Transp. Mut. Ins. Ass'n, Ltd.*, 635 F.Supp. 1503 (S.D.Fla. 1985). In that case, Judge King explained that "the law is clear that a third-party beneficiary is bound by the terms and conditions of the contract it attempts to invoke." *Id.* at 1503. Relying on this quote, Aylesford claims that Continental Florida Materials attempted to invoke the voyage charter party by filing this suit. Thus, Aylesford claims that Continental must also accept the arbitration provision included in the voyage charter party.

Aylesford cites the following excerpt from the Complaint to prove that Continental Florida Materials does, in fact, rely on the voyage charter party as the basis for its claim:

> The Defendant, M/V Lamazon, and the vessel on or about December 21, 2002, accepted the cargo delivered to it, and in consideration for certain freight charges paid or agreed to be paid to them, and agreed to transport or carry the cargo to the point of destination identified in Exhibit A, and there to deliver it to the cosignee named in Exhibit A in like order and condition when delivered to and received by them. Complaint ¶ 7.

Aylesford's argument, while creative, reflects a misplaced understanding of the instant suit. Continental Florida Materials does not rely on the voyage charter party as the basis for its complaint but, rather, relies upon the bill of lading itself. Although Aylesford cites Paragraph 7 of the Complaint to prove Continental's reliance on the voyage charter party, a close look at that paragraph actually undermines Aylesford's argument. Indeed, Paragraph 7 continually refers to Exhibit A of the Complaint. Notably, Exhibit A is the bill of lading, not the voyage charter party. In fact, a close reading of the Complaint reveals that Continental Florida Materials never cites or otherwise alludes to the voyage charter party between HC Trading and ED & F Man.

In *United States v. Cia. Naviera Continental, S.A.*, 202 F.Supp. at 698, the court recognized that the cosignee of a bill of lading could bring a breach of contract suit against the vessel owner based upon *either* "its ownership of the bill of lading, *or*, possibly, as a third party beneficiary under the contract of affreightment and the charter party." *Id.* at 701 (emphasis added). Similarly, in *Siderius, Inc. v. M.V. Ida Prima*, 613 F.Supp. 916, the court explained that:

> As seen from the viewpoint of the cosignee of the freight, the dispute does not arise under the charter. He has no interest in the charter, which governs the business relationship between the vessel owner (or disponent owner) and the charterer. He would view the bill of lading as the document upon which his rights are founded. *Id.* at 922.

Thus, it is not surprising that Continental Florida Materials, as consignee of the bill of lading, brought this suit based solely upon its ownership of the bill of lading, and not based upon its status as third-party beneficiary of the voyage charter party. Because Continental Florida Materials did not invoke the voyage charter party as the basis for its suit, it should not

be bound by the arbitration provision included therein. In short, the contract law principles governing third-party beneficiaries are simply not relevant to this case.

## V. CONCLUSION

This CAUSE came before the Court upon Aylesford, Ltd.'s Motion to Stay Pending Arbitration (D.E. No. 45), filed on *March 7, 2003*, and Continental Florida Materials' Motion to Enjoin Arbitration (D.E. No. 48), filed on *March 24, 2003*.

The Court has considered the motions, the responses, the supplemental briefs, and the pertinent portions of the record. For the reasons described in the preceding paragraphs, it is

**ADJUDGED** that Aylesford, Ltd.'s Motion to Stay Pending Arbitration (D.E. No. 45). filed on *March 7, 2003*, is DENIED. Further, it is

**ADJUDGED** that Continental Florida Materials' Motion to Enjoin Arbitration (D.E. No. 48), filed on *March 24, 2003* is GRANTED.